WILLIAM C. SILVER v. NORTH CAROLINA BOARD OF TRANSPORTA-
TION

No. 7924SC415

(Filed 17 June 1980)

1. **Limitation of Actions § 4.3– breach of contract – accrual of cause of action –
   action not barred by statute of limitations**
   Plaintiff's action to recover for breach of contract was not barred by the
   three year statute of limitations, though the action was brought more than
   three years after the consent judgment embodying the contract was signed,
   since, at the time the consent judgment was signed, no breach of contract
   had yet occurred, and whether the breach occurred at the time construction
   of a dam and pipe by defendant on plaintiff's property was completed in
   October 1975 or early 1976, or at the time the overall highway construction
   project was completed in July 1977, plaintiff's action filed in February 1978
   was brought within the applicable three year period.

2. **Contracts § 26– construction of dam and pipe system – problems with system –
   repairs – admissibility of evidence**
   In an action to recover for breach of contract to construct a dam and pipe
   system to carry water from the dam to plaintiff's mill, the trial court erred in
   permitting plaintiff's expert witness to testify that the system would never
   deliver enough water to the mill to turn the water wheel because the size of
   pipe used was too small, since such testimony directly contradicted the
   parties' contract which unambiguously specified that pipe 30 inches in dia-
   meter should be installed; the court did not err in permitting the witness to
   testify that the dam as constructed by defendant needed to be raised and
   that the cost would be $4000 to $5000, since such testimony was relevant not
   only to the issue of breach of contract but also to the issue of what would be
   required to conform the system to the contract and the cost thereof; the trial
   court erred in permitting the witness to testify concerning the necessity for
   a "filtering system and flow straightening system" at the entrance to the
   pipe at the dam, since such testimony was irrelevant to the issues and
   actually contradicted the express terms of the contract which contemplated
   a filtering system consisting only of a grate that would prevent foreign
   objects over three inches in diameter from entering the pipeline; and the
   trial court erred in permitting the witness to testify that a sweeping radius
   pipe was necessary to replace the open raceway area between the 30 inch
   pipe installed by defendant and the old 30 inch pipe running towards the mill
   under the old highway, since the agreement was ambiguous as to whether
   the parties intended that a pipeline be constructed the entire distance from
   the new dam to the mill, and it was for the jury to determine whether the
   contract so required.

3. **Contracts § 27.2– construction of dam and pipe system – breach of contract –
   sufficiency of evidence**
   In an action to recover for breach of contract, the trial court did not err in

denying defendant's motion for directed verdict since ample evidence was presented from which the jury could infer that the dam and pipe system as constructed did not substantially conform to the terms of the agreement contained in the consent judgment in that the exit end of the new pipeline was higher than the level of the dam and a slide gate to the dam which was broken during construction was never properly repaired.

APPEAL by defendant from *Howell, Judge.* Judgment entered 8 December 1978 in Superior Court, MADISON County. Heard in the Court of Appeals 5 December 1979.

This is an action to recover damages for an alleged breach of contract. Plaintiff is the owner and operator of a milling business known as Silver's Mill, located on Old N.C. Highway 213 in Petersburg, N.C. On 18 November 1974 plaintiff and the Board of Transportation signed a consent judgment in a proceeding instituted by the State to condemn a portion of the property on which plaintiff's mill was located in connection with a state highway construction project. Under the terms of that consent judgment the Board of Transportation agreed to pay $1,275.00 as a portion of the just compensation for the taking and, as additional compensation, agreed as follows:

[T]he Board of Transportation covenants and agrees that as part of the consideration for the taking of the above described real property, it will construct in good operating condition, a weir dam across Bull Creek at or near the site where the present dam is now located, together with a 30″ pipeline with a slide gate, for the conveyance of said water from said dam to Silver's Mill, and provided with a grate or guard over or near the water entrance into the pipe so as to prevent foreign objects over three inches in diameter entering the pipe. Additionally, as a part of the consideration for the taking of the above described property the Board of Transportation gives, grants, and conveys, to the defendants, their heirs, executors and/or assigns, a right and easement for the exclusive use of the water diverted by the above described weir dam as supplied by said pipeline and the right to go upon said premises on which the dam and pipeline are located for the purposes of inspecting, repairing and operating a slidegate and any other apparatus

necessary for the complete use of said facility. It is further agreed that any necessary maintenance requirements to the above described 30″ pipe will be handled by the Board of Transportation, through its authorized agents, at no expense to the defendants and through normal maintenance responsibilities.

On 24 February 1978 plaintiff filed the complaint in the present action alleging that the weir dam, slidegate, and other apparatus as constructed by defendant were not in good working condition and provided insufficient water to serve as a power source for the operation of plaintiff's mill. He also alleged that defendant had failed, after repeated requests by plaintiff, to place the apparatus in good working condition or to perform necessary maintenance. Plaintiff prayed that he recover damages in the amount of $20,000.00 from defendant on account of the breach and that defendant be ordered to construct a dam and other apparatus in accordance with the terms of the consent judgment. Defendant denied that the agreement had been breached and alleged that all requirements in the consent judgment had been met.

The case was heard before a jury at the 4 December 1978 session of superior court in Madison County. The evidence presented tended to show:

Plaintiff has been in the milling business for thirty-three years. Prior to the taking of his property, plaintiff used both water power and diesel power to grind corn. Diesel power was used to grind corn during the times of year when there was insufficient water. Prior to the taking, power to turn the water wheel at the mill was provided by means of a log crib type dam, approximately six or seven feet high, located on Bull Creek near the mill. The water from the creek flowed through a wooden drop gate at the dam into an earthen sluice running two to three hundred feet from the dam to old N.C. Highway 213. At that point, the water from the creek entered a thirty-inch pipe fifty to seventy-five feet long which passed under old Highway 213, and then flowed into an open earthen ditch three to five hundred feet long running parallel to the highway. At a point fifty to seventy-five feet above the mill, the water again entered

a thirty-inch metal pipe, discharged into a wooden sluiceway and from there flowed over the water wheel of the mill.

After the signing of the consent judgment in November 1974, defendant tore down the old dam and constructed a new concrete and steel dam .3 feet above the level of the old dam and several feet further from the mill. At the top of the dam, defendant installed a thirty-inch pipe, along with a vertical and horizontal grid system of bars at the top of the pipe to filter out debris. This pipe replaced part of the old raceway which was removed by defendant for the construction of a fill to accommodate a new bridge. The thirty-inch pipe was installed to run for a distance of approximately 300 feet under the newly constructed Highway 213 so as to empty the creek water into the pre-existing raceway and thence to direct the water flow into the pre-existing thirty-inch pipe under old N.C. 213. Plaintiff's expert witness Thomas Ray, a civil engineer, testified that the exit point of the new thirty-inch pipe installed by the State was .43 feet higher than the top of the dam. This exit point was also the end point of the State's right of way, approximately 300 feet from the dam. The State made no changes in the existing water flow system beyond the end of its right of way.

Over defendant's objection plaintiff's expert witness was permitted to testify that the system as constructed would never provide enough water to turn the water wheel and to describe a series of modifications which in his opinion would be necessary to develop a sufficient head on the water to furnish power to the mill. Ray did testify from personal observation that the dam appeared in good operating condition and that the grid system installed at the entrance to the thirty-inch pipe at the top of the dam was capable of stopping any object in excess of three inches in diameter. He noticed, however, that the exit end of the pipe was bent or crushed at the top.

Engineers with the State Division of Highways who planned the dam and pipe system constructed on plaintiff's property testified that the project was designed to replace in kind the system existing prior to the highway construction. The pipe was laid on a zero grade on a stone foundation to prevent sagging. As of the completion date of the overall highway con-

struction project on 1 July 1977, the State's engineers were of the opinion that the dam, the gate, and the new pipe were in good operating condition and that water flowed freely throughout the system.

At the close of all of the evidence the trial court denied defendant's motion for a directed verdict and submitted issues which were answered by the jury as follows:

1. Did the Plaintiff and the Defendant enter into a contract on 18 November, 1974, as alleged by the Plaintiff?

ANSWER: YES.

2. At the time of the execution of the contract on the 18th of November, 1974, was it understood and agreed by the Plaintiff and the Defendant that the agreement to "construct in good operating condition a weir dam across Bull Creek at or near the site where the present dam is now located together with a 30 inch pipeline with a slide gate for the conveyance of said water from said dam to Silver's Mill" intended to include the installation of a 30 inch pipeline the entire distance from the dam to the mill as alleged by the Plaintiff?

ANSWER: NO.

3. At the time of the execution of the contract, was it understood and agreed by the Plaintiff and the Defendant that the agreement to "construct in good operating condition a weir dam across Bull Creek at or near where the site where the present dam is now located together with a 30 inch pipeline with a slide gate for the conveyance of said water from said dam to Silver's Mill", intended to include only the area of the old raceway located upon the right of way purchased or owned by the Defendant?

ANSWER: YES.

4. Did the Defendant breach the contract as alleged by the Plaintiff?

ANSWER: YES.

5. What amount of damages is the Plaintiff entitled to recover of the Defendant for breach of contract?

ANSWER: $13,000.00

From judgment on the verdict that plaintiff recover $13,000.00 of defendant, defendant appealed.

*Bruce B. Briggs for plaintiff appellee.*

*Attorney General Edmisten by Senior Deputy Attorney General R. Bruce White, Jr., and Assistant Attorneys General Guy A. Hamlin and Frank P. Graham for defendant appellant.*

PARKER, Judge.

[1] Defendant assigns error to the denial of its motion to dismiss plaintiff's action on the ground that it was brought more than three years after the date of the consent judgment. The three-year period of the statute of limitations governing actions based on express contracts does not begin to run until the alleged breach occurs and the cause of action accrues. *Reidsville v. Burton*, 269 N.C. 206, 152 S.E. 2d 147 (1967); *Craig v. Price*, 210 N.C. 739, 188 S.E. 321 (1936). Once the statute is pleaded, the burden is on the plaintiff to show that the action was brought within the applicable period. *Little v. Rose*, 285 N.C. 724, 208 S.E. 2d 666 (1974). In the present case the cause of action could not have accrued at the time the consent judgment embodying the contract was signed, since no breach of the contract had yet occurred. Plaintiff testified at trial that the State ceased work on the project on his property in October 1975 or early 1976, and witnesses for the State testified that the overall highway construction project of which plaintiff's dam and pipeline were only a part, was not completed until 1 July 1977. Whether the breach occurred at the time the construction of the dam and pipe were completed in October 1975 or early

1976, or at the time the overall highway construction was completed in July 1977, plaintiff's action filed in February 1978 was brought within the applicable three-year period provided by G.S. 1-52(1) and was not barred. Defendant's motion to dismiss was properly denied.

[2] Defendant also assigns error to the admission of testimony by plaintiff's expert witness Ray concerning the inability of the dam and pipe system to supply enough water to turn the water wheel at the mill and concerning the engineering modifications necessary to enable it to do so. In response to a question by plaintiff's counsel as to the reason that the system would never deliver enough water to the mill to turn the water wheel, Ray stated that "the total head that you have to work with is not enough with the present size pipe to deliver the amount of water that is necessary." The rule is well-established that "[w]hen the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of construction, cannot reject what the parties inserted or what the parties elected to omit." *Weyerhaeuser v. Light Co.*, 257 N.C. 717, 719, 127 S.E. 2d 539, 541 (1962); *accord, Indemnity Co. v. Hood*, 226 N.C. 706, 40 S.E. 2d 198 (1946). Because the relevant provision of the parties' contract unambiguously specified that pipe thirty inches in diameter should be installed, any evidence that thirty-inch pipe was inadequate directly contradicted that written provision and should not have been admitted.

Ray's testimony which followed concerned proposed changes in the system which would increase the head of the water sufficiently to furnish water power to the mill. Defendant contends that such testimony concerning "improvements" was irrelevant in that it introduced matters beyond the scope of the parties' contract. We agree.

The substance of Ray's testimony was as follows: In order to provide sufficient water flow to operate the mill, the dam would have to be raised ten inches, and the entrance to the pipe at the top of the dam would need "a filtering system and a flow straightening system to arrange the

water and get the water directed into the entrance of the pipeline without any resistance from surface debris, leaves and that sort of thing." At the point where the thirty-inch pipe built by the State now empties into the old raceway, a "sweeping radius pipe," one with valve arrangements to sweep out silt gathering inside the pipe due to the higher elevation of the exit point, would be required to replace the open raceway area between the new pipe running from the dam and the pipe running under old Highway 213 towards the mill.

The admissibility of this evidence depends upon interpretation of the parties' contract. The State's obligation under the agreement, in essence, was to construct: (1) "a weir dam across Bull Creek in good operating condition at or near the site of the existing dam", (2) "together with a 30" pipeline with a slide gate, for the conveyance of said water from said dam to Silver's Mill," and (3) "a grate or guard over or near the water entrance into the pipe so as to prevent foreign objects over three inches in diameter entering the pipe." The object of contract construction is to ascertain the intention of the parties "from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.*, 229 N.C. 518, 520, 50 S.E. 2d 295, 297 (1948). The clear intention of the parties in including the provisions for dam and pipe construction is stated in the consent judgment itself, that is, to furnish part of the consideration for the taking of plaintiff's property. The record discloses that a new dam was required because the project for which plaintiff's property was taken necessitated the tearing down of the existing dam to accommodate a drainage system for the new highway. Similarly, the purpose of the pipe construction is stated to be "the conveyance of said water [of Bull Creek] from said dam to Silver's Mill." The agreement is ambiguous as to the length of the pipe to be installed. Viewing the language of the agreement in light of the situation of the parties at the time, we conclude that a fair reading of its terms discloses that the parties intended the construction of a dam and a 30-inch pipeline which would permit the waters of Bull Creek to flow unimpeded to

Silver's Mill with whatever force the full capacity of the pipe and the elements of nature should provide. Nothing in the agreement discloses that the parties intended that the State provide a system which would at all times furnish sufficient water to run plaintiff's mill.

Viewing the testimony offered by plaintiff's expert in light of this analysis, we conclude that it is necessary to distinguish those portions of the testimony which injected into the case matters beyond the scope of the contract from those which were relevant to the question of what would be required to conform the project to the terms of the contract. "The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent. What the equivalent is depends upon the circumstances of the case." *Robbins v. Trading Post, Inc.*, 251 N.C. 663, 666, 111 S.E. 2d 884, 887 (1960). Although Ray testified that the dam was "in operating condition," he also stated that the exit end of the thirty-inch pipe leading from the dam was higher than the top of the dam by .43 feet, reducing the total head differential of the water flow. This evidence had a direct bearing on the question of whether defendant substantially complied with its contract to construct a system in a good and workmanlike manner. Thus, it was proper for the court to permit Ray to testify that the dam needed to be raised, and that the cost would be approximately $4,000.00 to $5,000.00, since such testimony was relevant not only to the issue of breach of contract, but also to the issue of what would be required to conform the system to the contract and the cost thereof.

Ray's testimony concerning the necessity for a "filtering system and flow straightening system" at the entrance to the pipe at the dam, in contrast, was not only irrelevant to these issues, but actually contradicted the express terms of the contract, which contemplated a filtering system consisting only of a grate or guard that would prevent foreign objects over three inches in diameter from entering the pipeline. Its admission, therefore, was error.

Ray's testimony that a sweeping radius pipe was necessary to replace the open raceway area between the thirty-inch pipe installed by the State and the old thirty-inch pipe running towards the mill under old highway 213 was inadmissible for similar reasons. The agreement was ambiguous as to whether the parties intended that a pipeline be constructed the entire distance from the new dam to the mill, and it was for the jury to determine whether the contract so required. *Root v. Insurance Co.*, 272 N.C. 580, 158 S.E. 2d 829 (1968). Moreover, even if evidence that a pipe should have been installed within the raceway area to which Ray referred was admissible, nothing in the contract required the State to install anything more than the thirty-inch pipe expressly mentioned, and testimony concerning the sweeping radius pipe should have been excluded.

[3] Defendant has also assigned error to the denial of its motion for a directed verdict at the close of all of the evidence on the grounds that the evidence established as a matter of law that defendant fully complied with the terms of the contract. We find no error. Viewed in the light most favorable to plaintiff, the nonmoving party, ample evidence was presented from which the jury could infer that the system as constructed did not substantially conform to the terms of the agreement contained in the consent judgment in that the exit end of the new pipeline was higher than the level of the dam, and a slide gate to the dam which was broken during construction was never properly repaired. In addition, the ambiguity of the contract as to the length of the pipe to be installed was for the jury to resolve.

That the incompetent evidence which was erroneously admitted impermissibly affected the verdict is confirmed by the trial court's instructions to the jury. In those instructions the court referred to the testimony of the witness Ray concerning the complicated filtration and dispersal system and to his testimony concerning the cost of these items. Although the court later properly instructed the jury that "there is no duty on the Defendant to construct a dam sufficient to turn the mill wheel or to install any filter system," it thereafter instructed them that they could award up to $13,000.00 in damages. That $13,000.00 figure to which the trial court referred and which the jury subsequently adopted was based not only on Ray's compe-

Meachan v. Board of Education

tent testimony concerning the cost of raising the dam, but also on his incompetent testimony concerning the cost of the filtering and flow straightening system and the sweeping radius pipe.

For errors in the admission of evidence, the defendant is entitled to a

New Trial.

Chief Judge MORRIS and Judge HILL concur.