GILBERT HEMRIC AND VANN HEMRIC, PLAINTIFFS V. DONALD GROCE
AND BETTY GROCE, DEFENDANTS

No. COA02-217

(Filed 3 December 2002)

**1. Judgments— memorandum language omitted from consent judgment—judgment controls**

A consent judgment properly entered supercedes a memorandum of judgment, and contempt language in a memorandum of judgment which was not included in the subsequent consent judgment had no bearing on the case.

**2. Judgments— consent—not domestic—not enforceable by contempt**

A district court lacked the authority to enforce a non-domestic consent judgment through contempt. A consent judgment is a contract enforceable by breach of contract, specific performance, or a declaratory judgment and not by contempt; plaintiffs here did not pursue those avenues.

**3. Contempt— non-domestic consent judgment—not enforceable by contempt**

A district court lacked authority to find a party in contempt for noncompliance with a non-domestic consent judgment, its orders were void, and the superior court erred by denying defendants' Rule 60 motion for relief from judgment.

**4. Appeal and Error— mootness—contempt order—period of incarceration expired—subsequent damages action**

An appeal from a contempt order was not moot even though the period of incarceration had passed because the findings and conclusions made in the contempt order could be used in a damages action which plaintiffs subsequently filed.

**5. Administrative Law— exhaustion doctrine—parallel action with distinct claim**

The exhaustion doctrine was not applicable where plaintiffs unsuccessfully petitioned the County Farm Service Agency (CFSA) for defendants' tobacco marketing cards under the Agricultural Code, did not appeal that decision, and brought a separate action for breach of a consent judgment. That action sought a contract remedy which was not available under the Agricultural Code.

**6. Collateral Estoppel and Res Judicata— tobacco allotment—CFSA ruling—breach of contract action**

A damages claim for not delivering tobacco marketing cards was not barred by res judicata based on a ruling by the County Farm Service Agency (CFSA) because the hearing before the CFSA involved an analysis of the Agriculture Code and the damages action turned on an interpretation of a consent judgment.

**7. Agriculture— tobacco allotments—marketing cards—damages**

A claim for monetary damages for failure to deliver tobacco marketing cards was not barred by the fact that the tobacco allotments, which run with the land, were leased to a new tenant for the next year. Defendants, as the farm operators, had title to the cards under federal regulations; moreover, plaintiffs were not seeking (in this action) the delivery of the cards.

**8. Agriculture— tobacco allotments—lease—overproduction**

There were genuine issues of material fact in an action arising from tobacco allotments and the possession of marketing cards where defendant contended that the lease between the parties did not permit overproduction, but the lease contained language with respect to the applicability of the CFSA rules and regulations and it was not clear whether the lease sought to limit use of the marketing cards or whether it sought to hold plaintiffs liable for statutory penalties if plaintiffs overproduced.

Appeal by defendants from order filed 13 November 2001 by Judge Ronald E. Spivey in Yadkin County Superior Court. Heard in the Court of Appeals 29 October 2002.

*Finger, Parker, Avram & Roemer, L.L.P., by M. Neil Finger and Raymond A. Parker, for plaintiff appellees.*

*Hendrick & Bryant, L.L.P., by Matthew H. Bryant, for defendant appellants.*

GREENE, Judge.

Donald and Betty Groce (Defendants) appeal an order filed 13 November 2001 denying (1) their Rule 60(b) motion for relief from orders entered 29 September and 17 October 2000 (the contempt orders) and (2) their motion for summary judgment with

**HEMRIC v. GROCE**

[154 N.C. App. 393 (2002)]

respect to a separate damages action brought by Gilbert and Vann Hemric (Plaintiffs).[1]

In 1997, Defendants leased their Yadkin County farm property and the corresponding tobacco allotments to Plaintiffs. Under the terms of the lease, Plaintiffs agreed "to abide by all rules and regulations set forth by the CFSA office [(the County Farm Services Agency)]." According to an affidavit by the CFSA Agricultural Program Specialist for Tobacco, the rules and regulations provide that "[e]ach producer who has an interest in the crop produced in the current year is entitled to use the marketing card issued for the farm to market the producer's proportionate share of the crop, not to exceed 103% of the farm's effective marketing quota." The lease was to expire on 15 November 1997; however, the parties extended their agreement for an additional year. Subsequently, a dispute arose between the parties as to whether proper notice had been given to terminate the lease for the 1999 crop year, and Plaintiffs initiated an action (99 CVD 111) against Defendants in the Yadkin County District Court (the consent judgment action). This case was settled, resulting in a memorandum of judgment and a subsequent consent judgment signed by the parties and the trial court.

The consent judgment allowed Plaintiffs' year-to-year lease to continue for the 1999 crop year, ending no later than 15 November 1999. The parties agreed that, on or before 15 November 1999, Plaintiffs were to pay Defendants 52.5 cents per pound for all the tobacco raised on Defendants' property and sold in 1999. In the event some of the tobacco grown in 1999 was not sold before 15 November 1999, Plaintiffs were to pay this sum to Defendants when they did sell the crop.[2]

---

1. On 24 September 2002, this Court elected to hear this appeal pursuant to Rule 21 of the Rules of Appellate Procedure by allowing Defendants' referred motion for a writ of *certiorari*. *See* N.C.R. App. P. 21(a)(1) (grant of *certiorari*).

2. [1] The memorandum of judgment, which appears on a preprinted form, included as one of the parties' stipulations that the judgment would be "enforceable by the contempt powers of the court should any party not comply with its terms." This language was not included in the subsequent consent judgment. Because a consent judgment properly entered supercedes a memorandum of judgment, the contempt language in the memorandum of judgment in this case has no bearing on our analysis. The only time a consent judgment does not supercede a previous memorandum of judgment, thus giving the provisions contained in the memorandum of judgment effect, is where the consent judgment has some flaw. *See Buckingham v. Buckingham*, 134 N.C. App. 82, 516 S.E.2d 869 (1999) (memorandum of judgment is a final and valid judgment where party did not consent to consent judgment); *see also Miller v. Miller*, 153 N.C. App. 40, 45, 568 S.E.2d 914, 917-18 (2002) (giving effect to provisions in memorandum

In 1999, Plaintiffs produced tobacco on the leased property in excess of 16,800 pounds above the amount permitted to be sold in 1999. Plaintiffs sought to sell their 1999 overproduction in 2000 and requested Defendants' 2000 tobacco marketing cards for this purpose. Defendants refused to allow Plaintiffs the use of their marketing cards because (1) the 1999 lease had ended on 15 November 1999, at which time Defendants leased their property to a new tenant, and (2) Defendants had already granted Plaintiffs use of the marketing cards to sell 103% of the property's tobacco allotment in 1999.

On or about 17 August 2000, Plaintiffs initiated an administrative hearing before the CFSA to obtain Defendants' marketing cards for the 2000 crop year. The hearing was held on 8 September 2000. The CFSA's decision, announced by letter to the parties, denied Plaintiffs' request because the agency's regulations required issuance of marketing cards to the "farm operator," in this case Defendants, and stated Plaintiffs had fifteen days to appeal the decision.

Plaintiffs did not appeal the agency's decision. On 14 September 2000, Plaintiffs instead filed a motion to show cause why Defendants should not be held in contempt in the consent judgment action. In its motion, Plaintiffs alleged Defendants had failed to comply with the terms of the consent judgment by refusing to give Plaintiffs the necessary 2000 marketing cards to sell their 1999 overproduction. In an order entered 29 September 2000, the district court concluded "a reasonable interpretation of [the consent judgment was] that both parties contemplated there would be tobacco sold after November 15, 1999." Because, as the district court further concluded, the tobacco grown by Plaintiffs could not be sold without Defendants' 2000 marketing cards and any refusal by Defendants to allow Plaintiffs to use the cards would be in violation of the consent judgment, the district court ordered Defendants to turn over their marketing cards to Plaintiffs. In the event Defendants refused to comply with the order, they were directed to re-appear before the district court. Defendant Betty Groce partially complied with the district court's order. When defendant Donald Groce, however, refused to give Plaintiffs his marketing card, the district court, in an order entered 17 October 2000, held Donald Groce in civil contempt, resulting in a thirteen-day incarceration, at the end of which the 2000 tobacco market closed and the district court ordered his release.

---

of judgment and knocking out inconsistent provisions in consent judgment where the defendant failed to sign formal consent judgment).

Having been unable to sell their overproduction in 2000, Plaintiffs, on 10 January 2001, filed a damages action (01 CVS 22) against Defendants in superior court (the damages action). In their complaint, Plaintiffs alleged Defendants had been previously held in civil contempt for their failure to comply with the consent judgment. Defendants filed an answer on 22 March 2001. On 3 August 2001, Defendants also filed a motion for relief from judgment under Rule 60(b)(4) regarding the contempt orders in the consent judgment action and a motion for summary judgment with respect to the damages action. As grounds for their 60(b)(4) motion, Defendants alleged in pertinent part that the district court was without authority to enter the contempt orders and thus enforce the consent judgment through contempt. In an order entered 13 November 2001, the superior court denied both Defendants' 60(b)(4) motion and their motion for summary judgment.

---

The issues are whether: (I) the district court had the authority to enforce the consent judgment through contempt; (II) the contempt orders are void; and (III) the superior court erred in denying Defendants' motion for summary judgment.

*Consent Judgment Action*

I

*Contempt Orders*

[2] Defendants contend the district court lacked the authority to enforce the parties' consent judgment through contempt. We agree.

A consent judgment is a contract between the parties entered upon the record with the sanction of the trial court and is enforceable by means of an action for breach of contract and not contempt.[3] *Crane v. Green*, 114 N.C. App. 105, 106, 441 S.E.2d 144, 144-45 (1994); *see Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) ("[a] consent judgment is a court-approved contract"); *In re Will of Smith*, 249 N.C. 563, 568-69, 107 S.E.2d 89, 93-94 (1959) (a consent judgment is nothing more than a contract between the parties, and a breach of contract is not punishable for contempt). Plaintiffs'

---

3. We note that an exception to this rule has been carved out in the field of domestic relations law. *See Walters v. Walters*, 307 N.C. 381, 386, 298 S.E.2d 338, 342 (1983) (all separation agreements approved by the trial court in the form of consent judgments are not to be treated as contracts between the parties but as court-ordered judgments enforceable by contempt).

attempt to have Defendants held in contempt for alleged noncompliance with the consent judgment was thus prohibited by our case law, and the trial court erred in entering the contempt orders. Although we recognize that there is authority to suggest a party may file a motion in the cause to seek specific performance of a non-domestic consent judgment, *see Few v. Hammack Enter., Inc.*, 132 N.C. App. 291, 299, 511 S.E.2d 665, 671 (1999) (the trial court may order specific performance of the terms of a mediated settlement agreement); *State ex rel. Howes v. Ormond Oil & Gas Co.*, 128 N.C. App. 130, 136, 493 S.E.2d 793, 797 (1997) (a settlement agreement may be enforced by petition or motion in the original action); *see also In re Will of Smith*, 249 N.C. at 568, 107 S.E.2d at 93 (a consent judgment will "support an order for specific performance in an action brought for that purpose"), or file an independent action for a declaratory judgment regarding the parties' contract embodied in the consent judgment, *see Home Health and Hospice Care, Inc. v. Meyer*, 88 N.C. App. 257, 262, 362 S.E.2d 870, 873 (1987) (while a party may, in a separate and independent action, seek a declaratory judgment with respect to a consent judgment, a declaratory judgment cannot be commenced by a motion in the cause), Plaintiffs did not pursue these avenues but restricted themselves to a motion to show cause why Defendants were not in contempt.[4]

## II

### *Void Orders under Rule 60(b)(4)*

[3] Plaintiffs argue in their brief to this Court that even if the district court lacked authority to hear Plaintiffs' motion to show cause, Defendants were prohibited from collaterally attacking the contempt orders because these orders were not void but merely voidable.[5] *See Worthington v. Wooten*, 242 N.C. 88, 92, 86 S.E.2d 767, 770 (1955) (only void judgments may be collaterally attacked).

In determining whether an order is void or voidable, our courts have held:

---

4. Although the 29 September 2000 order, the first of the district court's contempt orders, appears to be more in the nature of an order for specific performance or declaratory judgment, it does not change the overall nature of the proceedings initiated by Plaintiffs, which were those of contempt. *See Blevins v. Welch*, 137 N.C. App. 98, 100-01, 527 S.E.2d 667, 670 (2000) (the trial court, by interpreting a prior court order, did not transform the contempt action that was before it into a declaratory judgment action).

5. Defendants' attack of the contempt orders may be classified as collateral because their 60(b)(4) motion was only filed in reply to Plaintiffs' damages action and not in the consent judgment action itself.

"If a judgment is void, it must be from one or more of the following causes: 1. Want of jurisdiction over the subject matter; 2. Want of jurisdiction over the parties to the action, or some of them; or 3. Want of power to grant the relief contained in the judgment. In pronouncing judgments of the first and second classes, the court acts without jurisdiction, while in those of the third class, it acts in excess of jurisdiction."

*Allred v. Tucci*, 85 N.C. App. 138, 142, 354 S.E.2d 291, 294 (1987) (quoting *Ellis v. Ellis*, 190 N.C. 418, 421, 130 S.E. 7, 9 (1925)). In this case, the district court's contempt orders were void because a trial court clearly lacks the authority to find a party in contempt for non-compliance with a non-domestic consent judgment. *See Crane*, 114 N.C. App. at 106, 441 S.E.2d at 144-45. The superior court therefore erred in denying Defendants' motion for relief from judgment, and the contempt orders must be vacated.[6]

*Damages Action*

III

*Summary Judgment*

Defendants also appeal the superior court's denial of their motion for summary judgment with respect to Plaintiffs' damages claim.

A

[5] Defendants first argue the superior court lacked subject matter jurisdiction to hear Plaintiffs' damages action because Plaintiffs failed to exhaust their administrative remedies before the CFSA by not appealing the agency's decision. This Court has held that an action is properly dismissed for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies. *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 220, 517 S.E.2d 406, 410 (1999); *see Swain v. Elfland*, 145 N.C. App. 383, 388-89, 550 S.E.2d 530, 535 (dismissing the plaintiff's whistleblower claim in superior court where plaintiff had previously elected to try this claim in the Office of Administrative Hearings), *cert. denied*, 354 N.C. 228, 554 S.E.2d 832 (2001). This doctrine, however, does not apply where the judicial remedy sought is not available under the ad-

---

6. [4] Although Donald Groce is no longer incarcerated, we do not consider Defendants' appeal from the district court's denial of their 60(b)(4) motion as moot because of the potential use in the damages action of the findings and conclusions made in the contempt orders. This is evidenced by Plaintiffs' complaint in the damages action, which places great emphasis on the contempt orders.

ministrative process. *See Guthrie v. Conroy*, 152 N.C. App. 15, 20, 567 S.E.2d 403, 407-08 (2002) (as the plaintiff's common law tort claims for personal injury caused by intentional and negligent infliction of emotional distress did not amount to a statutory "sexual harassment case," the plaintiff was not required to exhaust administrative remedies before bringing her action in the trial court); *Brooks v. Southern Nat'l Corp.*, 131 N.C. App. 80, 86, 505 S.E.2d 306, 310 (1998) (a plaintiff is not required to exhaust administrative remedies where his common law claims were not subject to administrative review).

In this case, Plaintiffs petitioned the CFSA for issuance of Defendants' marketing cards pursuant to 7 C.F.R. § 723.305(a)(2) of the Agricultural Code. This section allows a producer on a farm to submit a request to the CFSA for direct issuance to him of the farm operator's marketing cards. *See* 7 C.F.R. § 723.305(a)(2) (2002). Evaluation of the producer's request is based solely on whether the producer is "a producer in the current crop year," 7 C.F.R. § 723.305(a)(3) (2002), and whether he "has been or likely will be deprived [by the operator] of the right to use the marketing card issued for the farm," 7 C.F.R. § 723.305(a)(1)(iii)-(2) (2002). When Plaintiffs brought their separate action for money damages based on a breach of the parties' consent judgment, they were seeking a remedy under contract law not available under the Agricultural Code. Accordingly, the exhaustion doctrine is inapplicable to this case, and the superior court did not err in denying Defendants' motion for summary judgment on this basis.[7]

### B

[6] Defendants next argue the superior court should have granted their motion for summary judgment because Plaintiffs' damages claim was barred by the doctrine of res judicata based on the CFSA's ruling regarding the issuance of the marketing cards. We disagree.

The hearing before the CFSA simply involved an analysis of sections 723.305(a)(2)-(3). The damages action, on the other hand, turns on an interpretation of the parties' consent judgment, an issue not before the CFSA. Accordingly, res judicata does not bar Plaintiffs' damages action. *See Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986) (under the doctrine of res

---

7. Defendants also raised the exhaustion doctrine with respect to their 60(b)(4) motion for relief from the contempt orders. For the reasons just stated, we reject this argument as well.

judicata "a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them").

## C

**[7]** Defendants further assert because tobacco allotments run with the land and the property had been leased to a new tenant for the 2000 crop year, "[Defendants'] allotment and marketing cards for 2000 did not belong to [Defendants]" and therefore Plaintiffs could not seek any damages under the 1999 lease and the parties' consent judgment. This argument has no merit because Defendants, as the farm operators, had title to the 2000 marketing cards. *See* 7 C.F.R. § 723.305(a)(1) (2002). Furthermore, even if the new tenant could assert title to the cards, this would have no effect on Plaintiffs' breach of contract action against Defendants because Plaintiffs are no longer seeking specific performance by having the marketing cards issued to them, as attempted in the CFSA hearing, but have restricted their claim to monetary damages.

## D

**[8]** Finally, Defendants argue the 1997 written lease agreement between the parties did not permit overproduction and thus their obligations to Plaintiffs ended on 15 November 1999 when the lease terminated.

Contrary to Defendants' contention, the 1997 lease only contains language with respect to the applicability of CFSA rules and regulations. While these rules permit Plaintiffs to sell 103% of the tobacco allotment assigned to the leased property, they do not specifically prohibit overproduction but merely contain provisions to penalize such overproduction. *See* 7 U.S.C.A. § 1314e(i)(1) (1999). It is thus not clear whether the 1997 lease sought to limit Plaintiffs' use of Defendants' marketing cards to 103% of the allotment or whether it sought to hold Plaintiffs liable for the statutory penalties in the event Plaintiffs overproduced. Accordingly, there are genuine issues of material fact that must be determined by a fact-finder. *See* N.C.G.S. § 1A-1, Rule 56(c) (2001).

In conclusion, we affirm the superior court's denial of Defendants' motion for summary judgment in the damages action but reverse its denial of Defendants' 60(b)(4) motion and remand this case with directions to vacate the contempt orders.

Affirmed in part and reversed and remanded in part.

Judges MARTIN and BRYANT concur.