GILBERT HEMRIC and VANN HEMRIC, Plaintiffs v. DONALD GROCE and
BETTY GROCE, Defendants

No. COA04-92

(Filed 15 March 2005)

**1. Appeal and Error— bench trial—standard of review**

In reviewing the findings from a bench trial, the Court of Appeals reviews matters of law de novo and reviews matters of fact for any competent supporting evidence, whether or not there is contradictory evidence of any one fact.

**2. Agriculture— lease of farm and tobacco allotments— duration**

There was testimony in a bench trial supporting the trial court's finding that a consent judgment reflected the agreement of the parties that a lease of two farms and tobacco allotments would terminate by 1 December 1999 and not extend into 2000.

**3. Agriculture— lease of farms and tobacco allotments—overproduction of tobacco**

In a bench trial involving the lease of two farms and tobacco allotments, there was evidence supporting a finding that plaintiffs had overproduced 11,500 pounds of tobacco on one of the farms. Defendant did not take exception to that finding and it is binding on appeal.

**4. Agriculture— lease of farms and tobacco allotments—marketing cards—expiration of lease**

The trial court erred by concluding that defendants breached their contract arising out of the consent judgment regarding the lease of two farms and tobacco allotments by not delivering the year 2000 marketing cards. Although these parties clearly contemplated the possible sale of tobacco grown on defendants' lands after 1 December 1999, nothing in the consent judgment or lease agreement suggests an intention of the parties to agree that defendants accepted any responsibility or obligation to turn over their 2000 marketing cards to plaintiffs to procure the sale of the overproduced tobacco after expiration of the lease in 1999.

5. **False Imprisonment— contempt to enforce consent judgment—insufficient evidence**

The findings supported the trial court's conclusion that defendants failed to prove a cause of action for false imprisonment arising from a show cause order to enforce a consent judgment concerning farm leases and tobacco allotments. The trial court's finding that defendant Donald Groce consented to his imprisonment by failing to deliver to plaintiffs the year 2000 tobacco marketing cards, unsupported by the evidence, was not necessary to support the trial court's conclusion that defendants failed to prove an intentional or unlawful detention by plaintiffs.

6. **Abuse of Process— evidence not sufficient—false imprisonment claim**

The trial court did not err by concluding that plaintiffs did not commit an abuse of process in an action concerning the lease of two farms and tobacco allotments where defendants did not identify any evidence that plaintiffs maliciously abused the legal process.

Appeal by defendants from order and judgment entered 29 September 2003 and order entered 26 November 2003 by Judge Russell G. Walker, Jr., in Yadkin County Superior Court. Heard in the Court of Appeals 21 October 2004.

*Finger, Parker, Avram & Roemer, L.L.P., by Raymond A. Parker and Andrew G. Brown, for plaintiffs-appellees.*

*Hendrick & Bryant, L.L.P., by Matthew H. Bryant, for defendants-appellants.*

TYSON, Judge.

Donald Groce and Betty Groce (collectively, "defendants") appeal from an order and judgment entered following a bench trial finding defendants breached their contract with Gilbert Hemric and Vann Hemric (collectively, "plaintiffs"). The trial court also denied defendants' claims for abuse of process and false imprisonment. We affirm in part, reverse in part, and remand.

## I. Background

The uncontroverted findings of fact show that in 1997, plaintiffs leased two Yadkin County farms, one owned by Donald Groce and one owned by Betty Groce, together with their corresponding

**HEMRIC v. GROCE**

[169 N.C. App. 69 (2005)]

tobacco allotments to raise and harvest a tobacco crop. The written agreement originally expired on 15 November 1997. The parties orally agreed to extend it for the 1998 agricultural year. After the end of the 1998 crop year, plaintiffs expended time, labor, and money to prepare defendants' farms for planting a third crop of tobacco in 1999. Defendants, however, refused to lease their farms to plaintiffs for the 1999 agricultural year.

Plaintiffs instituted an action in Yadkin County District Court, which resulted in a settlement evidenced by a memorandum of judgment and subsequent consent judgment entered. These judgments allowed plaintiffs to plant and harvest a tobacco crop during the 1999 agricultural year for a rent of 52.5 cents per pound of tobacco sold payable to defendants. The consent judgment, signed by all parties, stated, "If some tobacco grown on the property of the defendants by the plaintiffs in the year 1999 is not sold before November 15, 1999, plaintiffs shall pay defendants their 52.5 cents ($0.525) per pound when said tobacco is sold."

Plaintiffs overproduced their tobacco allotment in 1999. In August 2000, plaintiffs sought to obtain defendants' tobacco marketing cards for 2000 ("2000 marketing cards") in order to sell the surplus. Following a hearing, the Yadkin County Farm Service Agency refused to issue defendants' marketing cards to plaintiffs because regulations required the marketing cards to "be issued separately to the operator of [the farms]."

Plaintiffs subsequently filed a motion to show cause against defendants. The trial court entered an order requiring defendants to appear before the trial court and to show cause "why you should not be held in civil and/or criminal contempt for willful refusal to comply with the [memorandum of judgment and consent order] filed in this action . . . ." Following the hearing, the trial court entered an order concluding that

> the tobacco grown by plaintiffs on defendants['] farm could not be sold without the sales cards of the defendants . . . . [and] any refusal by the defendants to allow the plaintiffs to use the tobacco sales cards for tobacco grown by the plaintiffs on defendants' lands in the year 1999 would violate a clear and reasonable intent of the consent judgment signed by the parties . . . .

The trial court ordered defendants to "turn[] over [the tobacco cards] to the plaintiffs . . . to sell the tobacco . . . ." Betty Groce allowed

plaintiffs to use her 2000 marketing card to sell 2,500 pounds of the excess 1999 production from her farm.

Defendants appeared before the trial court on 9 October 2000. The trial court ordered Donald Groce to "make available to the plaintiffs his tobacco sales cards . . . on or before Noon on November 1, 2000 or to report to the Yadkin County Jail . . . ." The trial court ordered Betty Groce to "turn over to the plaintiffs on or before November 1, 2000 tobacco sales cards necessary for the plaintiffs to sell a total of 3,200 pounds of tobacco . . . [or] her inaction could be subject to further hearings in this matter . . . ." Betty Groce was not held in civil contempt because she had complied with the trial court's earlier order to the extent she authorized plaintiffs to sell 2,500 pounds of tobacco on her 2000 marketing card. Donald Groce refused to allow plaintiff to use his 2000 marketing card and presented himself to the Yadkin County Sheriff on 1 November 2000. He was incarcerated in the county jail for thirteen days.

Plaintiffs were unable to sell the over allotment tobacco. Plaintiffs filed a complaint in Yadkin County Superior Court on 10 January 2001 seeking compensatory and punitive damages caused by defendants' failure to relinquish their 2000 marketing cards. Defendants answered and asserted several defenses, along with a counterclaim for abuse of process and false arrest. On 2 August 2001, defendants moved for relief from judgment regarding the 9 October 2000 order arising out of the consent judgment action and for summary judgment with respect to plaintiffs' action to recover damages. The trial court denied both motions, and defendants appealed.

We addressed defendants' initial appeal in *Hemric v. Groce,* 154 N.C. App. 393, 572 S.E.2d 254 (2002) (*"Hemric I"*). In *Hemric I,* this Court affirmed the trial court's denial of defendants' motion for summary judgment and reversed the trial court's denial of defendants' motion for relief from the judgment. *Id.* We held the trial court did not possess the authority to enforce the parties' consent judgment through a finding of contempt and remanded the case to vacate the contempt orders. *Id.*

Following a trial without a jury, the trial court entered an order and judgment awarding plaintiffs $15,122.50 plus interest and denying defendants claims for false imprisonment and abuse of process. Defendants appeal.

HEMRIC v. GROCE

[169 N.C. App. 69 (2005)]

## II. Issues

The issues are whether the trial court erred by: (1) entering findings of fact numbered 4, 5, 7, 8, and 13, which defendants argue are not supported by the evidence; (2) concluding defendants breached their contract with plaintiffs by failing to deliver their 2000 marketing card to plaintiffs when the memorandum of judgment does not provide any rights to defendants' marketing cards; (3) failing to find the memorandum of judgment is ambiguous and ignoring undisputed extrinsic evidence of the parties' intent; (4) failing to consider the extrinsic evidence regarding the negotiation of the memorandum of judgment and the undisputed purpose of the parties' agreement; (5) concluding that Betty Groce breached her contract when plaintiffs did not plead her liability for the pounds from Donald Groce's farm and the trial court found that Betty Groce permitted plaintiffs to sell 2,500 pounds of tobacco on her 2000 marketing card; (6) concluding Donald Groce was unlawfully detained by plaintiffs; and (7) concluding plaintiffs did not commit an abuse of process.

## III. Findings of Fact

Defendants contend no evidence supports the trial court's findings of fact number 4, 5, 7, 8, and 13. At the outset, we note that defendants failed to present any argument or authority to support its assignment of error regarding findings number 4, 5, and 7 and they are deemed abandoned. N.C.R. App. P. 28(b)(6) (2004).

[1] "As to findings in a bench trial, we review matters of law *de novo*; we review matters of fact for any competent evidence of record to support the trial court's findings of fact and conclusions of law, whether or not contradictory evidence as to any one fact exists." *State Farm Fire & Cas. Co. v. Darsie*, 161 N.C. App. 542, 548-49, 589 S.E.2d 391, 397 (2003) (citing *Graham v. Martin*, 149 N.C. App. 831, 561 S.E.2d 583 (2002)), *disc. rev. denied and rev. dismissed*, 358 N.C. 241, 594 S.E.2d 194 (2004). Findings of fact numbers 8 and 13 are matters of fact and must be supported by competent evidence admitted before the trial court.

[2] In finding number 8, the trial court found:

> 8. The Consent Judgment clearly reflects the agreement of the parties that there would be no lease of Defendants' lands by the Plaintiffs for the 2000 crop year[,] which began on December 1, 1999

The consent judgment, signed by the parties and their attorneys, states:

> Both parties acknowledge that any and all lease agreements shall upon the signing of this Judgment terminate not later than November 15, 1999 and shall not extend into a new agricultural year beginning December 1, 1999 and there shall be no extension of the present lease beyond December 1, 1999.

At trial, Gilbert Hemric admitted on cross-examination that he "understood [his] lease was over with . . . Mr. Groce—at the end of November 15, 1999." Vann Hemric was asked whether he "understood that [his] tobacco—[his] farm and tobacco lease with the Groces was over in 1999?" He responded, "I understood that the farm lease was over and tobacco [sic] I think I could see what I had left over." Further, Donald Groce acknowledged on direct examination, "we had a contract for November 15 at the end of the 15th, the contract was over." This testimony supports the trial court's finding that the consent judgment reflects that the parties' lease would terminate by 1 December 1999 and not extend into 2000.

[3] Defendants also contend the trial court's finding number 13 is unsupported by the evidence. It states:

> 13. That Plaintiffs could have sold the 11,500 pounds of tobacco which was over-produced on Donald Groce's farm in 1999, had Donald Groce allowed Plaintiffs to use his 2000 marketing card and could have done so for a price substantially equivalent to the price obtained upon the sale of the excess poundage from Betty Groce's farm . . .

Defendants argue that because plaintiffs overproduced 182,081 pounds from all the farms they leased and the tobacco was stored in barns in unmarked bales, there was no way to determine what amount, if any, was overproduced on defendants' farm. Defendants, however, failed to take exception to finding of fact number 14, which states, "the 11,500 pounds of excess production on the Donald Groce farm has deteriorated . . . ."

"Where no exceptions have been taken to the findings of fact, the findings are presumed to be supported by competent evidence and are binding on appeal." *K&S Enters. v. Kennedy Office Supply Co.*, 135 N.C. App. 260, 267, 520 S.E.2d 122, 127 (1999) (citation omitted), *aff'd*, 351 N.C. 470, 527 S.E.2d 644 (2000). Finding number 14, which

is binding, supports that portion of the trial court's finding in number 13 that plaintiffs overproduced 11,500 pounds of tobacco on Donald Groce's farm.

The challenged findings are supported by the evidence. This assignment of error is overruled.

### IV. Consent Judgment

[4] Defendants contend the trial court erred by concluding they breached their contract arising out of the consent judgment with plaintiffs by failing to deliver the 2000 marketing cards. We agree.

### A. Standard of Review

"The general rule is that a consent judgment is the contract of the parties entered upon the record with the sanction of the court." *Crane v. Green*, 114 N.C. App. 105, 106, 441 S.E.2d 144-45 (1994) (citing *Armstrong v. Insurance Co.*, 249 N.C. 352, 106 S.E.2d 515 (1959)).

> The consent judgment is a contractual agreement and its meaning is to be gathered from the terms used therein, and the judgment should not be extended beyond the clear import of such terms. However, to interpret the nature and import of the consent judgment more precisely, courts are not bound by the "four corners" of the instrument itself. The agreement, usually reflecting the intricate course of events surrounding the particular litigation, also should be interpreted in the light of the controversy and the purposes intended to be accomplished by it.

*Price v. Horn*, 30 N.C. App. 10, 16, 226 S.E.2d 165, 168-69 (internal citations and quotations omitted), *cert. denied*, 290 N.C. 663, 228 S.E.2d 450 (1976).

Our review of an appeal from a trial court's order finding a breach of a contract through a violation of a consent judgment is well-established.

> Where the plain language of a consent judgment is clear, the original intention of the parties is inferred from its words. The trial court's determination of original intent is a question of fact. On appeal, a trial court's findings of fact have the force of a jury verdict and are conclusive if supported by competent evidence. The trial court's determination of whether the language in a consent judgment is ambiguous, however, is a question of law and therefore our review of that determination is *de novo*.

*Potter v. Hilemn Labs., Inc.*, 150 N.C. App. 326, 331, 564 S.E.2d 259, 263 (2002) (internal citations and quotation omitted).

Following a bench trial, the trial court found that the "Consent Judgment clearly reflects that the parties contemplated the possibility that all the tobacco raised might not be sold by November 15, 1999, and also clearly states their mutual agreement that the agreed upon price would be paid on any unsold tobacco when that tobacco was eventually sold." Usage of the term "clearly states" indicates the trial court's ruling that the consent judgment was not ambiguous as to this issue. We review this finding *de novo. Potter,* 150 N.C. App. at 331, 564 S.E.2d at 263.

### B.  Plain Language

" 'An ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties.' " *Id.* (quoting *Glover v. First Union National Bank,* 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993)).

> Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms.

*Martin v. Martin,* 26 N.C. App. 506, 508, 216 S.E.2d 456, 457-58 (1975) (citation omitted). " 'If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract.' " *Potter,* 150 N.C. App. at 334, 564 S.E.2d at 264 (citations omitted) (quoting *Walton v. City of Raleigh,* 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996)).

The consent judgment, signed by all parties, provided:

> 1.  Plaintiffs shall pay to the defendants on or before the 15th day of November, 1999 the sum of 52.5 cents ($0.525) per pound for all tobacco raised on defendants' properties and sold in 1999. If some tobacco grown on the property of the defendants by the plaintiffs in the year 1999 is not sold before November 15, 1999, plaintiffs shall pay defendants their 52.5 ($0.525) per pound when said tobacco is sold.

The "plain language" of the Consent Judgment supports the trial court's finding that the parties "clearly . . . contemplated the possibil-

ity that all the tobacco raised might not be sold by November 15, 1999, and . . . that the agreed upon price would be paid . . . when that tobacco was eventually sold . . . ." *See Potter*, 150 N.C. App. at 334, 564 S.E.2d at 264.

The consent judgment reflects the parties intended the lease to terminate no later than 1 December 1999 and states:

4. Both parties acknowledge that any and all lease agreements shall upon the signing of this Judgement terminate not later than November 15, 1999 and shall not extend into a new agricultural year beginning December 1, 1999 and there shall be no extension of the present lease beyond December 1, 1999.

The "plain language" supports the trial court's finding that the "Consent Judgment clearly reflects the agreement of the parties that there would be no lease of Defendants' lands by the Plaintiffs for the 2000 crop year which began on December 1, 1999 . . . ." *See id.*

## C. Breach of Contract

In proving a breach of contract, the plaintiff must show: "(1) existence of a valid contract and (2) breach of that contract." *Poor v. Hill*, 138 N.C. App. 19, 29, 530 S.E.2d 838, 845 (2000). The parties here do not dispute the validity of the consent judgment.

The trial court concluded defendants' refusal to turn over the 2000 marketing cards constituted a breach of contract. This conclusion of law is not supported by the trial court's findings.

The trial court found the lease was to expire on 1 December 1999, based on the consent judgment's provision that "any and all lease agreements" would terminate no later than 1 December 1999. The trial court made no findings that the parties agreed or intended that defendants would provide their marketing cards to plaintiffs for any year following expiration of the lease on 1 December 1999. Further, the lease agreement is silent on and makes no provision regarding plaintiffs' permission or entitlement to use the marketing cards following termination of the lease.

Were we to presume an ambiguity in the Consent Judgment, the trial court's findings are still inadequate to support its conclusion. Where an ambiguity exists, "[t]he object of contract construction is to ascertain the intention of the parties 'from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.' " *Silver v. Board of Transportation*, 47

N.C. App. 261, 268, 267 S.E.2d 49, 55 (1980) (quoting *Electric Co. v. Insurance Co.*, 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948)).

Although the parties "clearly" contemplated the possible sale of tobacco grown on defendants' lands after 1 December 1999, nothing in the consent judgment or lease agreement suggests "the intention of the parties" to agree that defendants accepted any responsibility or obligation to turn over their 2000 marketing cards to plaintiff to procure the sale of the overproduced tobacco after expiration of the lease in 1999. *Silver*, 47 N.C. App. at 268, 267 S.E.2d at 55. No findings were made regarding whether plaintiffs were entitled to the 2000 marketing cards as a result of the lease agreement or consent judgment.

The trial court found and competent evidence shows the parties intended the lease to extend no further than 1 December 1999. The trial court's order purports to extend this lease into the year 2000 by concluding defendants breached a contract by failing to turn over the 2000 marketing cards. This conclusions is unsupported by the findings of fact or any evidence in the record. To the extent the trial court's order finds defendants breached the contract with plaintiffs and awards damages thereon, it is reversed.

### V. False Imprisonment

[5] Defendants contend the trial court erred by concluding plaintiffs did not falsely imprison Donald Groce as a matter of law. We disagree.

" 'False imprisonment' has been defined as 'the illegal restraint of a person against his will.' " *Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996) (quoting *Marlowe v. Piner*, 119 N.C. App. 125, 129, 458 S.E.2d 220, 223 (1995) (citing *Fowler v. Valencourt*, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993))). " 'Illegal' or 'unlawful' [restraint] necessarily implies *deliberateness* in [the alleged wrongdoer's] actions." *Emory v. Pendergraph*, 154 N.C. App. 181, 185, 571 S.E.2d 845, 848 (2002) (emphasis supplied); *see also Harwood v. Johnson*, 326 N.C. 231, 388 S.E.2d 439, *reh'g denied*, 326 N.C. 488, 392 S.E.2d 90 (1990).

Plaintiffs argue Donald Groce "voluntarily" imprisoned himself and failed to avoid imprisonment by turning over the 2000 marketing cards. We held above that neither the consent judgment nor the lease agreement required defendants to release to plaintiffs the 2000 marketing cards after 1 December 1999. This argument is without merit. The trial court's finding of fact that Donald Groce "consented to his

HEMRIC v. GROCE

[169 N.C. App. 69 (2005)]

imprisonment" by failing to deliver to plaintiffs the 2000 marketing cards is unsupported by the evidence. However, this finding of fact is not necessary to support the trial court's conclusion that defendants failed to prove "an intentional detention by Plaintiffs or a detention which was unlawful."

The trial court found "Plaintiffs' use of a Motion to Show Cause was done for the direct, obvious and plain purpose of bringing about Defendants' compliance with specific terms of the Consent Judgment." The record contains evidence to support this finding. After plaintiffs filed their motion to show cause, a summons was issued and the trial court conducted a hearing in which defendants were represented by counsel. Following the hearing on 25 September 2000, the trial court ordered defendants to "cooperate with the plaintiffs to the end that the unsold tobacco raised and harvested by the plaintiffs on the defendants' land . . . can be sold on the sales cards of the defendants." The trial court did not hold defendants in contempt in the 25 September 2000 order and continued the hearing until 9 October 2000. Following the hearing on 9 October 2000; the trial court ordered Donald Groce in contempt for his failure to comply with the 25 September 2000 order.

The trial court, as fact finder, concluded defendants did not prove "deliberateness" on the part of plaintiffs to unlawfully imprison Donald Groce after a full trial on the merits. We do not address the question of whether a *subsequent* determination that contempt was not *initially* a viable legal vehicle for enforcement of a court order can trigger a prima facie claim for false imprisonment, to survive a motion for judgment on the pleadings, summary judgment, or directed verdict.

The trial court's finding that plaintiffs intended to use the motion to show cause to bring about defendants' compliance with the consent judgment is supported by evidence in the record. This finding of fact supports the trial court's conclusion that defendants failed to prove a cause of action for false imprisonment. This assignment of error is overruled.

## VI.  Abuse of Process

[6] Defendants contend the trial court erred by concluding plaintiffs did not commit an abuse of process. We disagree.

Our Supreme Court has explained the requirements to prevail on a claim for abuse of process.

[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attended to be secured.

*Fowle v. Fowle*, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965). Defendants fail to identify any evidence that plaintiffs maliciously abused the legal process. False imprisonment, alone, is insufficient to support allegations of abuse of process. *See Fowle*, 263 N.C. at 727-28, 140 S.E.2d at 401. This assignment of error is overruled.

### VII. Conclusion

The trial court erred by concluding defendants breached their contractual obligations to plaintiffs and awarding damages for the breach. That portion of the trial court's order and judgment is reversed. The trial court did not err in concluding defendants failed to show false imprisonment and that defendants presented insufficient evidence to establish their counterclaim for abuse of process. The trial court's order and judgment is affirmed in part, reversed in part, and remanded.

Affirmed in part; Reversed in part; and Remanded.

Judges BRYANT and LEVINSON concur.