WALTER JAMES FUCITO, Plaintiff v. FRANCINE MARIA FRANCIS, Defendant

No. COA04-1641

(Filed 20 December 2005)

**Divorce— incorporated settlement agreement—declaratory judgment action—subject matter jurisdiction**

The district court lacked subject matter jurisdiction over a declaratory judgment action seeking an interpretation of the parties' obligations arising from their separation agreement that was incorporated into a consent divorce judgment. A consent judgment is not one of the instruments a court can interpret pursuant to a declaratory judgment action; however, there may be a remedy through a contempt proceeding.

Appeal by defendant from order entered 24 June 2004 by Judge Gregory R. Hayes in Caldwell County District Court. Heard in the Court of Appeals 15 June 2005.

*Lucy R. McCarl for plaintiff-appellee.*

*Nick Galifianakis & Associates, by Nick Galifianakis and David Krall, for defendant-appellant.*

ELMORE, Judge.

Francine Maria Francis was married to Walter James Fucito for nearly twenty-four years before the two voluntarily signed a separation and property settlement agreement on 30 September 1992. As of 10 March 1993, the parties' agreement was incorporated into their divorce judgment. This case involves the trial court's interpretation of a distributive award provision in that incorporated agreement.

Within the agreement Mr. Fucito and Ms. Francis expressly waived alimony, noting "that he or she is not dependent upon or in need of maintenance and support from the other party," and also entered into a property settlement "for the purpose of dividing the marital property consistent with the concept of equitable distribution, and pursuant to the provisions of the North Carolina General Statutes, Section 50-20(d)[.]" The couple's consent divorce judgment states that Mr. Fucito shall have possession of the marital home and be responsible for the mortgage payments, utilities, maintenance, and *ad valorem* taxes from the date of the agreement. According to the property settlement section of the agreement entitled "Real

Property," within 48 hours of Ms. Francis moving from the marital home, Mr. Fucito:

> shall pay to [Ms. Francis] the sum of $125,000.00, which represents the first installment pursuant to the marital property distribution plan . . . [in the distributive award section] of this Agreement. After all the terms of said plan have been fully complied with, [Ms. Francis] shall execute a warranty deed conveying her interest in said residence to [Mr. Fucito], vesting sole ownership of said residence in [Mr. Fucito] alone.

The agreement further provides for a distributive award to Ms. Francis. This award provision reiterates that the first $125,000.00 payment to Ms. Francis shall be made within 48 hours of her vacating the residence, and then Mr. Fucito will make scheduled payments toward achieving full ownership of the property.

> (a) The sum of $125,000.00 (the first $125,000.00 installment of this distributive award) shall be paid to [Ms. Francis] within 48 hours of her moving from the marital residence, or on January 7, 1993, whichever first occurs.

> (b) Thirty-six monthly payments shall be paid to [Ms. Francis] in the amount of $1,500.00 per month, beginning on the month [Ms. Francis] moves from the residence, or beginning in January, 1993, whichever occurs first. Said payments are payable on the first day of each month.

> (c) After the thirty-sixth payment has been paid to [Ms. Francis], the Wife shall elect in writing one of the two following options:

>> (i) [Mr. Fucito] shall, on the first day of the month following the thirty-sixth payment, pay to [Ms. Francis] an additional sum of $125,000.00 (the second $125,000.00 installment of this distributive award), or

>> (ii) [Mr. Fucito] shall continue to be obligated to make monthly payments of $1,500.00 per month to [Ms. Francis] until one of the following shall occur:

>>> (A) [Ms. Francis] instructs [Mr. Fucito] to immediately pay her the second $125,000.00 installment as mentioned above, or

>>> (B) [Ms. Francis] dies . . ., or

>>> (C) [Mr. Fucito] dies . . . .

According to the agreement, should Ms. Francis die before receiving the second $125,000.00 installment, any of the thirty-six monthly installments of $1,500.00 remaining would be paid to Ms. Francis's estate and the second $125,000.00 installment would be immediately payable upon completion of the last monthly payment. Should Mr. Fucito die before payment of the second $125,000.00 installment, and should Ms. Francis receive at least a $200,000.00 life insurance benefit payable to her as a beneficiary by reason of Mr. Fucito's death, then "[Mr. Fucito's] estate is not liable for the payment of any balance due to [Ms. Francis] under this distributive award." However, in the event that Ms. Francis did not receive at least $200,000.00 in life insurance proceeds, then Mr. Fucito's "estate shall be liable for the payment of any balance due to [Ms. Francis] under this distributive award."

Mr. Fucito paid the first $125,000.00 installment in October 1992. He also completed payment of the thirty-six monthly installments of $1,500.00 on 13 September 1995. Just prior to receiving her thirty-sixth monthly payment, Ms. Francis wrote a letter to Mr. Fucito electing to forego immediate payment of the second $125,000.00 installment and instead continue receiving the $1,500.00 monthly installments. Realizing that as of January 2003 he would have paid Ms. Francis a second $125,000.00 in $1,500.00 installments, in December 2002 Mr. Fucito sent a warranty deed to Ms. Francis for her to sign pursuant to the settlement. Ms. Francis refused, stating that the plain language of her election obligated Mr. Fucito to continue making payments until she requested a $125,000.00 payment or one of them died. Since none of those triggering events had happened, she was not obligated to sign the deed.

On 2 June 2003 Mr. Fucito instituted a declaratory judgment action asking the district court to interpret the parties' rights and obligations under the incorporated settlement agreement. He contended that he had fully paid the distributive award and was now entitled to have Ms. Francis sign the deed. He further argued that any interpretation to the contrary, in particular Ms. Francis's interpretation of his obligation, was contrary to law, the parties' intent, and inconsistent with the settlement agreement as a whole. He asked the court to determine whether the distributive award had been paid in full; whether he had fully complied with the conditions set out in the "Real Property" section of the agreement; whether Ms. Francis had a duty to sign a deed to him transferring her interest in the former marital home; and whether he had a continuing duty to pay the distribu-

tive award. In turn, Ms. Francis filed a motion for summary judgment, a motion to dismiss for failure to state a claim upon which relief could be granted, and a motion for judgment on the pleadings.

In its order entered 24 June 2004, the district court interpreted the parties' incorporated agreement and agreed with Mr. Fucito. The district court found that if the parties intended the monthly payments to be a distributive award—thus having no tax consequences—and also intended to waive alimony, then Ms. Francis's election to receive a monthly payment of $1,500.00 must be read as spreading the second $125,000.00 installment over a number of months rather than having it paid all at once. The district court found that under Ms. Francis's interpretation of the agreement the monthly payments were indefinite, were not necessarily related to her interest in the home, and under North Carolina law could not be considered a distributive award. Since the parties agreed to waive alimony, agreed to a property settlement "consistent with the concept of equitable distribution", intended to have no adverse tax consequences, and also intended to have the agreement interpreted according to the laws of this state, then the only interpretation consistent with the parties' intent was that the continued monthly payments were credits toward the second $125,000.00 installment. Accordingly, the district court found that Mr. Fucito had paid a total distributive award of $304,000.00 and that was the extent of his obligation under the settlement agreement. Further, the district court denied all of Ms. Francis's motions and ordered her to convey her interest in the former marital home to Mr. Fucito within ten days. Ms. Francis appeals.

Since Ms. Francis raises the issue that the district court lacked subject matter jurisdiction to hear the declaratory judgment action, we will address it first. She argues that when the separation agreement, a contract, was incorporated into the consent divorce judgment, the resulting judgment could not fall under any category enumerated in section 1-254, which lists the subject matters of which a court may hear a declaratory judgment action.

While a "contract or other writings constituting a contract" is enumerated as one of the instruments a court can interpret pursuant to a declaratory judgment action, Ms. Francis is correct that a consent judgment is not so listed.

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordi-

nance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

N.C. Gen. Stat. § 1-254 (2003). However, our Supreme Court has long held that "a judgment by consent is but a contract between the parties put upon the record with the sanction and approval of the Court . . . ." *Yount v. Lowe*, 288 N.C. 90, 96, 215 S.E.2d 563, 567 (1975). In fact, in *Hemric v. Groce*, this Court held that a consent judgment is a contract and a party to a consent judgment may file an independent action for a declaratory judgment regarding the interpretation of the contract underlying the judgment. 154 N.C. App. 393, 397-98, 572 S.E.2d 254, 257 (2002) (citing *Home Health and Hospice Care, Inc. v. Meyer*, 88 N.C. App. 257, 262, 362 S.E.2d 870, 873 (1987)); *see also Ibele v. Tate*, 163 N.C. App. 779, 782, 594 S.E.2d 793, 795 (2004). But the facts of this case involve a consent divorce judgment with an incorporated settlement agreement, a situation set out as an exception to the general rule noted in *Hemric. See id.*, 154 N.C. App. at 397 n.3, 572 S.E.2d at 257.

In *Walters v. Walters*, 307 N.C. 381, 386-87, 298 S.E.2d 338, 342 (1983), for practical considerations, our Supreme Court fashioned a "one-size fits all" rule applicable to incorporated settlement agreements in the area of domestic law, holding that when parties present their separation agreement to the court for approval, the agreement will no longer be considered a contract between the parties, but rather a court-ordered judgment. Ms. Francis argues that since their settlement agreement is a court-ordered judgment, the district court did not have jurisdiction to "modify" it under the auspices of a declaratory judgment action. Instead, Mr. Fucito should have sought an action for contempt. *See Walters*, 307 N.C. at 386, 298 S.E.2d at 342 (enforcement shall be by contempt).

While we may disagree with Ms. Francis that the district court "modified," in the legal sense, any aspect of the parties' agreement rather than "interpreted" it, we nonetheless agree with her claim. In *Doub v. Doub*, 68 N.C. App. 718, 719-20, 315 S.E.2d 732, 734 (1984), *aff'd as modified*, 313 N.C. 169, 326 S.E.2d 259 (1985), this Court reviewed a breach of contract action and held that although *Walters* did not apply to the parties' incorporated separation agreement, even if it did; plaintiff still had an election under *Walters* to bring independent actions under contract. Our Supreme Court affirmed the holding of *Doub* in a *per curiam* opinion but disavowed the language

**FUCITO v. FRANCIS**

[175 N.C. App. 144 (2005)]

regarding an election of remedies under *Walters*. Instead the Court stated, "[t]he parties to a consent judgment controlled by *Walters* do *not* have an election to enforce such judgment by contempt or to proceed in an independent action in contract." *Doub v. Doub*, 313 N.C. 169, 171, 326 S.E.2d 259, 260-61 (1985) (emphasis in original). Rather, "[t]hese court ordered separation agreements, as consent judgments, are modifiable, and enforceable by the contempt powers of the court, in the same manner as any other judgment in a domestic relations case." *Id.* at 170-71, 326 S.E.2d at 260 (quoting *Walters*, 307 N.C. at 386, 298 S.E.2d at 342). While the Court did not specifically exclude the remedy of a declaratory judgment action, we find the Court's language persuasive.

The Supreme Court in *Doub* specifically prohibited "independent action[s] in contract." This Court in *Hemric* and *Ibele* referred to a declaratory judgment action as "an independent action," one that arises out of contract. *See Hemric*, 154 N.C. App. at 398, 572 S.E.2d at 257; *Ibele*, 163 N.C. App. at 782, 594 S.E.2d at 795; *see also Home Health*, 88 N.C. App. at 262, 362 S.E.2d at 873 (1987) ("A declaratory judgment is a separate and independent action to have the court 'declare rights, status, and other legal relations, whether or not further relief is or could be claimed.' " (quoting N.C. Gen. Stat. § 1-253 (2003)). Were we to allow Mr. Fucito to bring an independent declaratory judgment action to "interpret" the parties' consent divorce judgment, at best we would be adding an unnecessary nuance to a now settled area of the law, and at worst we would violate the mandate of the Supreme Court in *Doub*.

Thus, Mr. Fucito can bring an action for contempt, arguing that according to the judgment Ms. Francis is under an obligation to sign the deed. However, on these specific facts, it is unclear if that remedy will be adequate for the parties. For if the previous judgment of the court is ambiguous, as Mr. Fucito contends, then

> the law with respect to ambiguous judgments is not very well-developed in our State. What little law there is can be summarized as follows: Where a judgment is ambiguous, and thus susceptible to two or more interpretations, our courts should adopt the interpretation that is in harmony with the law applicable to the case.

*Blevins v. Welch*, 137 N.C. App. 98, 101-02, 527 S.E.2d 667, 670 (2000) (citation omitted). And further, "[i]f the prior order is ambiguous such that a defendant could not understand his respective rights and obli-

gations under that order, he cannot be said to have 'knowledge' of that order for purposes of contempt proceedings." *Id.* at 103, 527 S.E.2d at 671.

Nonetheless, in light of *Walters* and *Doub*, we are compelled to resolve some ambiguity regarding the power of the court on contempt proceedings to construe or interpret a prior consent divorce judgment in Mr. Fucito's favor. This Court held in *Home Health* that a court had no authority on contempt proceedings to construe or interpret a prior consent judgment. 88 N.C. App. at 262, 362 S.E.2d at 873 ("A declaratory judgment action may not be commenced by a motion in the cause, any more than can an action to modify or reform a consent judgment.") (citing *Holden v. Holden*, 245 N.C. 1, 95 S.E.2d 118 (1956)). However, in *Blevins* the Court seemingly rejected a similar argument.

> [D]efendants contend the trial court impermissibly transformed the contempt action that was before it into a declaratory judgment action by considering whether the easement awarded in the 1983 judgment included both the Mountain and Center roads. We find this argument to be without merit. A contempt proceeding requires willful violation of a prior court order or judgment. *Hancock v. Hancock*, 122 N.C. App. 518, 523, 471 S.E.2d 415, 418 (1996). As such, an interpretation of the prior court order in this case was required.

*Blevins*, 137 N.C. App. at 100-01, 527 S.E.2d at 670. With the limitation of remedies stated in *Walters* and *Doub* for disputes arising from settlement agreements incorporated into consent divorce judgments, we agree with the Court in *Blevins* and hold that the trial court has the authority under those circumstances to construe or interpret an ambiguous consent judgment. When doing so, however, it is appropriate to consider normal rules of interpreting or construing *contracts. See Holcomb v. Holcomb*, 132 N.C. App. 744, 513 S.E.2d 807 (1999); 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 14.32e (5th ed. 2002).

Having determined that the district court lacked subject matter jurisdiction over a declaratory judgment action to interpret the parties' obligations arising from their incorporated settlement agreement, we vacate the district court's order. We note, though, that the parties are not without further remedy regarding their perceived obligations under the agreement.

Vacated.

Judges CALABRIA and GEER concur.