RHONDA E. HOLDEN, Plaintiff-Appellant v. JOHN ALAN HOLDEN, Defendant-Appellee

No. COA10-1096

(Filed 2 August 2011)

**1. Divorce—consent order—construction of—judicial authority**

The trial court acted within its authority by construing the provisions of a consent order concerning the marital residence of a divorced couple at the request of the parties. The parties may, by agreement, properly petition the trial court for a determination of the meaning of disputed terms in a consent order without the requirement that one or both of the parties first be found in contempt. However, the court is without authority to order specific performance pursuant to a consent order in cases such as this, and, to the extent that the trial court required specific performance, those portions of its order were vacated.

**2. Divorce—property retained—interest**

The trial court did not err by determining that plaintiff owed interest on an amount due for property retained during a divorce.

**3. Divorce—consent order—interpretation—erroneous findings—holding not affected**

The trial court did not err in findings made when interpreting a consent order entered into as a part of a divorce settlement where any errors were *de minimis* and did not affect the holding.

Appeal by Plaintiff from order entered 16 March 2010 by Judge Jerry A. Jolly in District Court, Brunswick County. Heard in the Court of Appeals 7 March 2011.

HOLDEN v. HOLDEN

[214 N.C. App. 100 (2011)]

*Pennington & Smith, PLLC, by Ralph S. Pennington and Kristy J. Jackson, for Plaintiff-Appellant.*

*The Del Re' Law Firm, PLLC, by Benedict J. Del Re' Jr., for Defendant-Appellee.*

McGEE, Judge.

Plaintiff and Defendant were married on 12 May 1995, separated on 28 December 2001, and divorced on 8 January 2003. No children were born of their marriage. Plaintiff filed a complaint for post-separation support, alimony, equitable distribution, and attorneys' fees on 4 September 2002. Defendant answered Plaintiff's complaint on 18 September 2002, and counterclaimed for divorce and equitable distribution. Plaintiff and Defendant entered into a consent agreement (the agreement). At the request of the parties, the trial court entered the agreement as a consent order (the consent order) on 8 January 2003. The consent order was amended by order filed 21 January 2003 (the amended consent order). However, the amended consent order was not signed by Plaintiff, Defendant, or their respective attorneys. Plaintiff filed a "Motion Pursuant to Rule 60 of the North Carolina Rule[s] of Civil Procedure" on 1 April 2003, requesting that both the consent order and the amended consent order be set aside. The trial court entered an order on 16 July 2003 (the 16 July 2003 order), ruling that the consent order represented the "intention of the parties as signed by their choice and agreement" and was therefore valid, but that the amended consent order was void.

Relevant to this appeal, the consent order gave Plaintiff a "66.66% undivided interest in the marital residence" and further stated that Plaintiff would be "responsible for 66.66% of the Principal . . ., monthly insurance, and . . . taxes for the [marital] residence accrued beginning January 1, 2003 and thereafter until the [marital] residence is sold." Defendant received a "33.33% undivided interest in the marital residence" and responsibility for a corresponding share of the principal, insurance, and taxes, also beginning 1 January 2003. Plaintiff was given "physical possession of the marital residence and [responsibility] for the maintenance and upkeep." These terms regarding the marital residence were to be effective until 8 June 2008, at which time the parties could agree to sell the marital residence, Plaintiff could purchase Defendant's interest in the marital residence, or they could seek partition.

Plaintiff and Defendant also agreed to a division of personal property, and a list setting out the division was incorporated into the consent order. The consent order specifically stated that Defendant should have "the property and furniture given to him from his parents and all personal property listed and/or purchased from any corporate or business interest of Defendant." Section 16 of the consent order contained the following: "The parties will have as their respective debts and hold the other parties harmless from same as follows[.]" Section 16 then listed "Plaintiff's Debts" and "Defendant's Debts" as sub-sections. The following was listed under "Plaintiff's Debts" as being Plaintiff's responsibility:

> F. 66.66% of the acquisition costs and payment of the amortization on a $100,000.00 Equity Line to be obtained by the parties and to be secured by the marital residence.

> G. 66.66% of the principal balance and associated interest on the marital residence mortgage.

The following was listed under "Defendant's Debts" as being Defendant's responsibility:

> H. 33.33% of the acquisition costs and payment of the principal amortization on a $100,000.00 Equity Line to be obtained by the parties and to be secured by the marital residence.

Section 17 of the consent order stated:

> The parties agree that either party can prepay any obligation set forth, joint or otherwise. That said prepayment will enure to the benefit of the payor. That at any time, either party can make a lump sum payment on any debt (Vehicle, House, or Equity Line) and receive the full principal reduction as a reduction pro-rata in any payments due to either party or by either party. That if Defendant pays the sum representing 1/3 of the current balance due on the Home Loan or Equity Loan in advance then his duty to make any payment will cease.

The consent order further mandated that Plaintiff and Defendant would file separate tax returns for the 2002 tax year. Handwritten on the consent order was an addition that stated:

> Within 10 days of today's date [8 January 2003], the parties agree to acquire a $100,000 line of equity against the marital residence. At that time, [] Plaintiff will pay Defendant $16,000 for her share of the personal property she has retained.

HOLDEN v. HOLDEN

[214 N.C. App. 100 (2011)]

This handwritten addition was written by Plaintiff's attorney at the time. Section 26 of the consent order stated: "That all payments and obligations will be paid timely when due [and] any failure to make payments timely will result in the breach of this agreement." The consent order included the determination that, "[b]ased upon the . . . findings of fact and conclusions of law, and the stipulations and consents of the parties, . . . that both the parties are satisfied with the services of their respective counsels." The consent order further stated that

> the parties to this action have agreed that they understand the terms of this consent agreement, that those terms were explained to them by their respective attorneys; that this agreement was the result of arms length negotiation and that neither party was coerced or made additional promises to enter into this agreement against their will that this agreement is signed today by their conscious choice and agreement. That neither party has signed this agreement based upon promises that are not contained in this agreement.

Plaintiff appealed the 16 July 2003 order in which the trial court ruled that the consent order was valid and represented the intentions of Plaintiff and Defendant. Plaintiff's appeal was decided by our Court by an unpublished opinion filed 15 February 2005. *Holden v. Holden*, 168 N.C. App. 595, 608 S.E.2d 415, 2005 N.C. App. LEXIS 357 (2005) (*Holden I*). In *Holden I*, our Court affirmed the 16 July 2003 order, thereby affirming that the consent order was binding on Plaintiff and Defendant.

On 2 February 2006, pursuant to N.C. Gen. Stat § 1A-1, Rule 60(b)(4)-(5), Plaintiff moved to set aside portions of the consent order and, pursuant to N.C. Gen. Stat § 1A-1, Rule 70, to enforce portions of the consent order. In her motion, Plaintiff stated:

> Pursuant to N.C.G.S. § 1A-1, Rule 60(b)(4)-(5) (2006), [Plaintiff] respectfully moves [the trial court] to set aside or otherwise relieve her from the effect of several provisions of the Consent Order previously entered in the above-captioned case on January 8, 2003. [Plaintiff] concurrently moves [the trial court] to enforce several other portions of the Consent Order pursuant to N.C.G.S. § 1A-1, Rule 70 (2006).

Though Plaintiff's motion was filed in 2006, it apparently was not noticed for hearing until sometime in 2009. In Plaintiff's request for relief pursuant to Rule 70, she requested that the trial court "direct

that [Defendant]—through a person appointed by [the trial court]—sell his interest in the Former Marital Home to [Plaintiff] according to the terms" Plaintiff had set forth in a letter dated 23 November 2005.

Defendant filed a response to Plaintiff's motion on 1 September 2009, and also moved for "Specific Performance of Agreement & . . . for Order to Show Cause for Contempt" at that same time. Defendant moved the trial court "for an Order compelling [] Plaintiff to comply with the terms of the [consent order] and to specifically enforce the [consent order.]"

In Defendant's 1 September 2009 pleadings, he contended, *inter alia*, that Plaintiff had breached the consent order by: (1) refusing to allow Defendant to collect personal property from the marital residence, (2) refusing to allow Defendant to collect corporate property, (3) improperly using half of Defendant's tax overpayment credit on her 2002 tax return, and (4) abusing the equity line by using one hundred percent of the $100,000.00 equity line, when Plaintiff was only entitled to two-thirds of the equity line. Defendant prayed that the trial court

> enter an Order to show Cause why [] Plaintiff should not be held in Contempt of the Prior Order of the [trial court]; . . . [f]or specific performance of the terms and conditions of the order and that any sum due Defendant be paid to Defendant by Order of the [trial court] or allowed as an offset or credit against any Equity in the marital residence. . . . [And] that [] Plaintiff be held in Civil Contempt.

At an 8 December 2009 hearing, the trial court heard some of the issues brought forward in the parties' motions. The trial court entered an "Order on Plaintiff's Motion to Set Aside and Defendant's Motion for Specific Performance and Motion for Order of Show Cause for Contempt" on 22 January 2010. Neither party appealed the trial court's 22 January 2010 order. A hearing was conducted on 8 January 2010 that addressed Defendant's counterclaims. At the 8 January 2010 hearing, the parties agreed, and Plaintiff stipulated to the trial court, that the marital residence would be listed for sale. Defendant's attorney stated:

> [M]y motion was brought as a motion for an order to show cause as opposed to coming to the court *ex parte* and getting an order to show cause, so the Court's . . . . [A]ny ruling this Court makes will [have] been basically that this is an order to show cause now.

**HOLDEN v. HOLDEN**

[214 N.C. App. 100 (2011)]

The parties have agreed and stipulated that any amounts that the Court feel is owed under this agreement to get offset from the [sale of the marital residence]. Do you [Plaintiff] stipulate to that?

Plaintiff's counsel answered: "Yes, your Honor, we stipulate that it'll be from the sales price." Defendant's attorney then stated that Plaintiff had stipulated to the fact that, pursuant to the consent order, Plaintiff still owed Defendant $16,000.00 for payment for Defendant's property that Plaintiff and Defendant had agreed Plaintiff would keep. Plaintiff's counsel responded: "We recognize, your Honor, that's . . . the amount that's owed and, yes, when everything's said and done that that amount shall be offset from the sale proceeds." In her closing statement, Plaintiff's attorney reiterated that "as we stipulated at the onset of this matter we know that we owe the $16,000 and we would ask this Court to include in its Order that the payment of that $16,000 come from [Plaintiff's] portion of the sales proceeds from the sale of [the marital residence]."

An affidavit by Jason C. Disbrow (Mr. Disbrow), who was Plaintiff's attorney at the time the consent order was entered, was admitted at the hearing. In Mr. Disbrow's affidavit, he affirmed that Plaintiff and Defendant had reached an agreement, and had stated the terms of their agreement to him and to Defendant's attorney. Mr. Disbrow took notes at the meeting and, in his affidavit, stated that Plaintiff and Defendant had agreed that they "would take out a $100,000 equity line within ten (10) days with [Plaintiff] getting two-third[s] (2/3) and [Defendant] getting one-third (1/3)." At the hearing, Plaintiff contended that this portion of Mr. Disbrow's affidavit was incorrect.

The trial court entered its order from the 8 January 2010 hearing on 16 March 2010. The 16 March 2010 order stated "on Plaintiff's[1] Motion in the Cause and based upon the record, evidence and arguments of counsel, and stipulations of the parties, the Court makes the following Findings of Fact:"

4. That the parties Stipulated in open Court this day, that the [marital residence] be listed and sold for fair market value[.]

5. That the Parties stipulated in open Court that any ruling of the court for monies owed would not result in an Order to Show

---

1. Though the order states "on Plaintiff's Motion in the Cause," we assume this is because Plaintiff initiated the action now on appeal. The order clearly addresses Defendant's motion in the cause, included in Defendant's response to Plaintiff's motion.

Cause but would be reflected as a credit against the party owing said sums from that party's share of gross sale proceeds of the marital residence.

6. That the Parties stipulated in open Court that [] Plaintiff owes to Defendant the sum of $16,000.00 with the issue of interest being reserved for the court's ruling.

7. That pursuant to the terms and conditions of the [consent order], that within ten days of January 8, 2003, the parties agreed to acquire a $100,000 Line [of] Equity against the marital residence. At that time [] Plaintiff would pay to [] Defendant the sum of $16,000.00 for certain personal property she was retaining.

8. That it was the intent of the parties to get a loan for $100,000 so [] Plaintiff could pay [] Defendant with [] Plaintiff getting 2/3's of the loan proceeds and [] Defendant getting 1/3 of the loan proceeds.

9. That the repayment obligations were then set forth in the balance of the [consent order] with each paying for their respective share of acquiring the loan and repaying the loan.

10. That after the parties arranged for the Equity Line at the bank, [] Plaintiff withdrew the full sum of $100,000 from the Equity Line, with [] Defendant drawing no sums from that account.

11. That [] Plaintiff paid the full Equity Line payment for a period of time until Plaintiff refused to continue making the payment and [] Defendant was required to pay 1/3 of the repayment obligation and then, by agreement, continued to pay $500.00 per month.

12. That [] Defendant did not receive any money under the Equity Line Loan and has made payments on said equity line through October 29, 2009 in the sum of $34,879.06.

13. That [] Plaintiff is responsible for the repayment of the full Equity Line Debt and to retire said debt from her proceeds from the marital residence upon sale of said residence.

14. That pursuant to Paragraph 19 of the [consent order] Plaintiff could not make any additional claims against the property of [] Defendant after the entry of [the consent order].

15. That for the tax year 2001, [] Defendant paid estimated taxes for his tax liability then paid the sum of $67,000 for Federal Taxes

HOLDEN v. HOLDEN

[214 N.C. App. 100 (2011)]

and $25,000 for N.C. State Taxes as estimated tax along with an extension in the Fall of 2002 from his separate and borrowed funds.

16. That said payments resulted in overpayments of $40,713.00. The overpayment was not from overpayment of estimated taxes made during the marriage but from separate funds post separation.

17. That for the tax year 2002, [] Plaintiff took one half of Defendant's tax overpayment credit on her 2002 taxes in the sum of $20,362.00, being one half of the $40,723.00 which was the property of [] Defendant.

18. That [] Defendant is entitled to reimbursement for the sum of $20,362.00 from [] Plaintiff from [] her part of the gross sales proceeds of the marital residence.

19. That [] Defendant has requested in this proceeding the return of his personal and corporate property per the [consent order].

20. That [] Defendant identified his remaining personal property being listed on the Addendum to the [consent order] and the corporate exercise and gym equipment and what items he had already received (grandfather's clock, father's dressers).

21. That [] Defendant identified the majority of his personal property being located at the marital residence as of 30 days ago during an appraisal inspection.

Based upon these findings of fact, the trial court concluded in relevant part:

1. That the parties are properly before this Court and this court has personal and subject matter jurisdiction.

2. That [] Defendant is entitled to specific performance of the [consent order].

3. That the parties are capable of complying with the [consent order].

The trial court then ruled in its order: (1) that Defendant was entitled to specific performance of the consent order; (2) that the marital residence would be listed for sale; (3) that upon sale of the marital residence Plaintiff would receive two-thirds of the net proceeds, and Defendant would receive one-third of the net proceeds; (4) that

Plaintiff would pay from her proceeds two-thirds of the remaining first mortgage on the marital residence, and all of the balance due on the home equity loan; (5) that Plaintiff would pay Defendant $16,000.00, plus interest accrued from 18 January 2003; (6) that Plaintiff would reimburse Defendant $20,362.00 for the improper use of Defendant's 2001 tax credit; and (7) that Plaintiff would reimburse Defendant $34,879.06 for payments Defendant had made for Plaintiff's use of the home equity loan through 29 October 2009 and any additional monies needed to reimburse Defendant for additional payments made on the home equity loan after 29 October 2009. The trial court also ordered that Plaintiff allow Defendant to retrieve his personal property from the marital residence after Defendant gave Plaintiff ten day's notice. Plaintiff appeals from the 16 March 2010 order of the trial court.

I.

**[1]** Plaintiff argues that the trial court erred by ordering her to specifically perform her obligations under the consent order. We agree in part.

The record is clear that Plaintiff and Defendant came before the trial court for resolution of disputes arising from the consent order. Plaintiff initiated the present action through her filing of motions for partial relief from some of the terms of the consent order, and partial specific performance of other terms of the consent order. Defendant moved for specific performance of certain terms of the consent order, and for Plaintiff to show cause why she should not be held in contempt for violating terms of the consent order. When the matter came before the trial court, Plaintiff and Defendant stipulated that, rather than proceeding with a traditional contempt hearing that could potentially result in Plaintiff's incarceration and a contempt order requiring her to perform pursuant to the terms of the consent order, that the hearing proceed without the threat of contempt and contempt sanctions hanging over Plaintiff. Instead, the parties agreed to proceed by presenting evidence to the trial court concerning the provisions of the consent order, and also agreed to abide by the decision of the trial court concerning interpretation of the provisions of the consent order and the trial court's determination of Plaintiff's and Defendant's obligations under the consent order.

The parties stipulated that any monies owed by one party to the other pursuant to the consent order would be satisfied from the owing party's proceeds from the sale of the marital residence. The trial court did what was asked of it by the parties, including Plaintiff.

The trial court, however, reached a result contrary to Plaintiff's wishes. Plaintiff, represented by the same firm on appeal that represented her at the hearing, now argues that the trial court committed error by following the procedure Plaintiff asked it to follow. Plaintiff makes the peculiar assertion that the trial court should have found her in contempt before requiring her to abide by the terms of the consent order—even though Plaintiff made an agreement at the hearing that protected her from a possible contempt order. Plaintiff's conduct in this matter is troublesome.

Plaintiff and Defendant entered into an agreement providing for the division of their property. "It is well-settled in North Carolina that compromises and settlements of controversies between parties are favored by our courts." *State ex rel. Howes v. Ormond Oil & Gas Co.*, 128 N.C. App. 130, 136, 493 S.E.2d 793, 796 (1997) (citations omitted). Had the parties not presented their agreement to the trial court for entry as a consent order, one or both parties could have filed an action for breach of contract and specific performance of the contract, or filed an action for a declaratory judgment to allow the trial court to determine the terms of the agreement. However, because Plaintiff and Defendant requested that the trial court enter their agreement as a consent order, contract remedies and an action for declaratory judgment are no longer available to them pursuant to *Walters v. Walters*, 307 N.C. 381, 298 S.E. 2d 338 (1983), and its progeny.

> Once approved by the court as a judgment of the court a separation agreement loses its contractual nature. *Walters v. Walters*, 307 N.C. 381, 386, 298 S.E. 2d 338, 342 (1983); *Henderson v. Henderson*, 307 N.C. 401, 407, 298 S.E. 2d 345, 350 (1983). *See Doub v. Doub*, 313 N.C. 169, 326 S.E. 2d 259 (1985). Therefore, on remand, should the trial court again enter an order of specific performance for payments which at the time the order was entered were future payments due plaintiff, that order shall affect only those payments due before the date of incorporation of the separation agreement into the divorce decree.

*Cavenaugh v. Cavenaugh*, 317 N.C. 652, 659, 347 S.E.2d 19, 24 (1986); *see also Fucito v. Francis*, 175 N.C. App. 144, 622 S.E.2d 660 (2005) (declaratory judgment not available when consent agreement has become an order of the court in divorce action). Plaintiff and Defendant disagreed as to the meaning of certain terms of the consent order. Because of the entry of the agreement as a consent order of the trial court, a legal fiction now exists that the agreement reached between Plaintiff and Defendant is not an agreement

between Plaintiff and Defendant, but solely a ruling of the trial court. Even though the trial court did not make an independent determination concerning the reasonableness of the agreement, the terms of the agreement, or what the terms of the agreement meant, we are constrained to treat the agreement as if it were an order whose terms were decided by the trial court instead of reached by agreement of the parties.

This legal fiction resulted in our Court stating in *Fucito*, that we "hold that the trial court has the authority [in a contempt proceeding in a divorce action] to construe or interpret an ambiguous consent judgment. When doing so, however, it is appropriate to consider normal rules of interpreting or construing *contracts*." *Fucito*, 175 N.C. App. at 150, 622 S.E.2d at 664 (citation omitted); *see also Fucito v. Francis*, 2007 N.C. App. LEXIS 1438 (July 3, 2007) (unpublished opinion) (*Fucito II*). Therefore, the trial court, in clarifying the terms of what is deemed its own order, must apply the rules of contract interpretation, for a document that has ceased to be a contract, including, if necessary, determining the intent of the parties. The trial court is, therefore, not authorized to simply state what the terms of "its" order actually mean.

Following *Walters*, a party to a consent order like the one before us may move for the trial court to exercise its contempt powers to enforce that consent order. Contempt, however, may only be found upon a showing that the party in noncompliance with the consent order acted willfully, and was capable of complying with the consent order. *Cavenaugh*, 317 N.C. at 660, 347 S.E.2d at 25 (citations omitted). If the relevant terms of the consent order are determined to be ambiguous, a finding of contempt will generally not be proper, as it is difficult for one to willfully refuse to comply with a term one does not understand. It is unclear from prior opinions concerning consent orders like the one before us what remedy exists when the parties disagree with the meaning of the terms of a consent order, or what remedy exists for the enforcement of a consent order if contempt cannot be, or is not, proven.

In the present case, Defendant filed a contempt motion to show cause. Pursuant to *Fucito*, the trial court had the authority to construe the consent order pursuant to its contempt powers. Plaintiff argues, however, that the trial court did not conduct a contempt hearing, and that the trial court's order is devoid of evidence that the trial court entered the order on contempt grounds. It is clear from the

record why the trial court did not enter an order holding Plaintiff in contempt—assuming the trial court would have found Plaintiff in contempt—because Plaintiff and Defendant stipulated that, as an alternative to a determination of Plaintiff's contempt, they would abide by the determination of the trial court concerning the disputed terms of the consent order. Plaintiff and Defendant further stipulated—using the proceeds from the sale of the marital residence.

We believe, on the facts before us, that the trial court was acting within its authority in construing the consent order at the request of Plaintiff and Defendant. To hold otherwise would lead to needless inefficiencies; diminution of the authority of trial courts to enforce their own judgments, and of the powers of the parties to make agreements; and confusion concerning what remedy, if any, is available to parties in the position of Plaintiff and Defendant to establish certainty concerning their obligations under consent orders.

In *Pitts v. Broyhill*, 88 N.C. App. 651, 364 S.E.2d 738 (1988), this Court held that the parties, formerly husband and wife, by agreement could enter into a valid contract that effectively vacated a term of their separation agreement that had previously been incorporated into their divorce decree. If parties may alter a consent order by agreement, and without the participation of the trial court, we believe parties may, by agreement, properly petition the trial court for a determination of the meaning of disputed terms in a consent order without the requirement that one or both of the parties first be found in contempt. Our holding is in accordance with public policy which encourages the parties to decide issues by agreement when possible, encourages civility in contested proceedings, and seeks efficient resolution of contested issues.

Defendant agreed to relinquish his right to pursue his contempt motion against Plaintiff in this particular action. This was a benefit to Plaintiff. Plaintiff and Defendant agreed that the trial court would construe the contested terms of the consent order, and that the determination of the trial court would be binding. The trial court proceeded as requested by Plaintiff and Defendant. Plaintiff may not now complain that the trial court did what Plaintiff asked it to do simply because she does not like the outcome. By agreement of the parties, the consent order now stands as construed by the trial court. Those portions of the consent order not contested by the parties, and for which the trial court made no determination, remain in force as originally submitted by the parties and entered by the trial court on 8 January 2003.

The trial court is without authority to order specific performance pursuant to a consent order in cases like the one before us. *Cavenaugh*, 317 N.C. at 659, 347 S.E.2d at 24. To the extent the trial court required specific performance of the terms of the consent order, those portions of the 16 March 2010 order are vacated. This holding, however, has little effect in the present case. As the consent order is an order of the court, Plaintiff and Defendant are required to comply with the terms of the consent order. Plaintiff and Defendant retain the right to move in the cause for contempt, or pursue any other available remedy, should Plaintiff or Defendant fail to comply with the terms of the consent order. By agreement and stipulation of the parties, the terms of the consent order as construed by the 16 March 2010 order shall be satisfied from the proceeds of the sale of the marital residence.

The terms of the consent order concerning Defendant's personal property cannot be satisfied pursuant to the sale of the marital residence, and the trial court was without authority to grant specific performance of the consent order. Therefore, should Plaintiff fail to comply with these terms of the consent order, Defendant will have to seek enforcement as allowed by law.

## II.

[2] Plaintiff further argues that the trial court erred by determining that she owed interest on the $16,000.00 she owed Defendant for Defendant's property that she retained. The consent order clearly states that Plaintiff was to pay Defendant $16,000.00 by 18 January 2003. Plaintiff stipulated that she had not paid as required pursuant to the consent order, and further stipulated that she owed Defendant $16,000.00. According to an uncontested finding of fact in the 16 March 2010 order, "the Parties stipulated in open Court that Plaintiff owes to Defendant the sum of $16,000.00 with the issue of interest being reserved for the court's ruling." The trial court made its ruling, granting interest "at the legal rate from January 18, 2003[.]" This ruling is supported by the evidence, findings of fact, and conclusions of law. Having stipulated that the trial court should make that determination, Plaintiff cannot now argue that the trial court erred by doing so.

## III.

[3] Plaintiff also argues that the trial court erred in making certain findings of fact and conclusions of law.

It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there

was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*.

*Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992) (citations omitted). We have reviewed Plaintiff's arguments concerning this issue. We hold that any factual errors in the findings of fact are *de minimis*, and do not affect our holdings above. In all relevant respects, the trial court's findings of fact are supported by competent evidence and thus are binding on appeal. *Id.* The trial court's conclusion of law that "Defendant is entitled to specific performance of the [consent order]" is in error, and we vacate that portion of the 16 March 2010 order. Plaintiff's additional arguments concerning the conclusions of law are without merit.

We affirm the 16 March 2010 order as a valid determination of the contested issues before the trial court by the consent and stipulation of both Plaintiff and Defendant. The consent order now includes both the consent order entered 8 January 2003 and the decisions of the trial court concerning the contested terms of the consent order as memorialized in the 16 March 2010 order. By agreement and the stipulation of the parties, monies owed to Defendant from Plaintiff shall be satisfied out of Plaintiff's proceeds from the sale of the marital residence. As with any proper order of the trial court, the parties are bound by it, and required to comply unless relieved of their obligations by law. Because the trial court lacked subject matter jurisdiction to order specific performance, those portions of the order requiring specific performance are vacated. The parties are free to pursue any remedies allowed by law should either party fail to comply with the consent order.

Affirmed in part, vacated in part.

Chief Judge MARTIN and Judge McCULLOUGH concur.