An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e   P r o c e d u r e .

NO. COA13-1133

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

JENESS J. CAMPBELL,
     Plaintiff,

v.                                    Wake County
                                      No. 09 CVD 17335
MELVIN E. CAMPBELL,
     Defendant.


Appeal by defendant from order entered 3 May 2013 by Judge Lori G. Christian in Wake County District Court.  Heard in the Court of Appeals 19 February 2014.


> *Kurtz & Blum, PLLC, by Lynn A. Prather, and Sandlin Family Law Group, by Debra A. Griffiths, for plaintiff-appellee.*
>
> *Cranfill Sumner & Hartzog LLP, by Michelle D. Connell, for defendant-appellant.*


BRYANT, Judge.


The District Court has subject matter jurisdiction over claims for equitable distribution and alimony, and can incorporate those claims into a judgment for absolute divorce by the consent of both parties.  A separation agreement, once

incorporated by the trial court into a divorce judgment, can be enforced through the contempt powers of the court.

On 31 August 2009, plaintiff Jeness J. Campbell filed for absolute divorce from defendant Melvin E. Campbell. That same day, plaintiff filed a separate action for a qualified domestic relations order ("QDRO").[1] On 15 October 2009, defendant answered and filed a *pro se* answer and counterclaim for equitable distribution, alimony and attorneys' fees. Although defendant captioned his answer and counterclaim in response to plaintiff's complaint for absolute divorce, he listed on his response the file number as being 09 CVD 173334, which does not match the file number for either the divorce action (09 CVD 17335) or the QDRO action (09 CVS 17334).

On 30 November 2009, plaintiff filed motions to dismiss, to strike, and for Rule 11 sanctions, alleging that defendant's counterclaim was an insufficient defense to absolute divorce and contained irrelevant material meant to harass plaintiff, and that defendant's counterclaim was meritless because defendant had already agreed to a mediated settlement agreement resolving

---

[1] Plaintiff's QDRO action, 09 CVD 17334, sought an order regarding a $25,000.00 lump sum distribution to defendant from plaintiff's Duke University retirement plan. On 19 February 2010, the trial court issued an order granting plaintiff's QDRO action.

all issues. On 3 December 2009, plaintiff filed an affidavit of judicial assignment and notice of hearing requesting an expedited hearing date for her motions to dismiss, to strike, and for Rule 11 sanctions.

On 3 February 2010, a memorandum of mediated settlement agreement was filed. The settlement agreement contained provisions for the sale of the marital home in Brier Creek and a property in Kentucky; the division of bank, credit card, and retirement accounts; custody and visitation rights for the parties' dog, Bella; and plaintiff's alimony payments and distributive award to defendant. That same day, the trial court entered a judgment for absolute divorce which incorporated the memorandum of settlement agreement and noted that with the exception of the pending QDRO, "[a]ll other outstanding issues between the parties have been resolved pursuant to the mediated agreement." On 15 March 2010, the trial court entered an order dismissing all of plaintiff's motions and defendant's counterclaims.

On 26 March 2012, plaintiff filed a motion to modify alimony and for an order to show cause. Plaintiff alleged that defendant had: relinquished his rights to the family dog, Bella; failed to abide by the trial court's order regarding the sale of

the Kentucky property; experienced an improvement in his financial situation requiring a change in plaintiff's alimony payments; and that defendant "has been frustrating the sale of the marital residence so that he can remain living there rent-free with Plaintiff paying the entire mortgage, taxes, home owners association fees and social country club dues." Plaintiff thereafter dismissed her motion to modify alimony. An amended and supplemental motion for an order to show cause was filed by plaintiff on 11 January 2013, and again on 22 January, alleging defendant had committed many acts that obstructed the sale of the marital home.

In the meantime, on 10 January 2013, defendant filed motions to modify alimony and to show cause for contempt, alleging that plaintiff had refused to sign listing contracts with realtors, failed to reimburse defendant for repairs to the marital home, and had violated defendant's visitation rights with the family dog. Defendant further alleged that because plaintiff's financial situation had improved while defendant's financial situation simultaneously declined, defendant was entitled to an increase in alimony.

On 5 February 2013, plaintiff filed a motion for Rule 11 sanctions against defendant, alleging that defendant's motions

were meritless and filed to harass her. Defendant filed motions to compel and for sanctions on 12 February. On 14 February, plaintiff filed a motion to dismiss defendant's motions to compel and for sanctions and a motion for Rule 37 sanctions, again alleging that defendant's motions to compel and for sanctions were frivolous and made solely for the purpose of harassing her.

On 18 March 2013, the trial court conducted a hearing on all motions filed by plaintiff and defendant. The trial court issued a contempt order on 2 May, holding defendant in civil contempt of the 3 February 2010 order[2]; denying plaintiff's motions for Rule 11 and Rule 37 sanctions; and dismissing defendant's motions to compel, modify alimony and for sanctions. Defendant appeals.

_____

_____

[2] In holding defendant in civil contempt of the 3 February 2010 order, the trial court made findings of fact that defendant willfully refused to sell the marital home by: failing to place the home on the market with a reputable real estate agent; listing the home at an unrealistic sale price; refusing to place "for sale" signs in the yard or a lock box on the door; making unreasonable demands and conditions on realtors wishing to show the home to potential buyers; and failing to keep the home in a saleable condition by not making required repairs, maintaining the yard, and keeping the home's temperature at a comfortable level. The trial court then noted that "[i]t is clear that Defendant is willfully blocking the sale of the marital house" and that "Defendant's actions are willful and calculated to ensure that the house will never sell."

On appeal, defendant argues that: (I) the trial court lacked subject matter jurisdiction over defendant's claims for alimony and equitable distribution; (II) the trial court lacked subject matter jurisdiction to incorporate the memorandum of mediated settlement agreement into the divorce complaint; and (III) defendant cannot be held in contempt of a void order.

*I.*

Defendant first argues that the trial court lacked subject matter jurisdiction over his claims for alimony and equitable distribution. We disagree.

"[W]hether a trial court has subject matter jurisdiction is a question of law, which is reviewable on appeal *de novo*." *Yurek v. Shaffer*, 198 N.C. App. 67, 75, 678 S.E.2d 738, 743 (2009) (citations omitted).

Defendant contends that because plaintiff did not file for equitable distribution and alimony when she filed for absolute divorce and failed to join defendant's counterclaims for equitable distribution and alimony to her complaint for absolute divorce, the trial court lacked subject matter jurisdiction to adjudicate defendant's claims for equitable distribution and alimony when it ruled on plaintiff's complaint for absolute divorce. We disagree, as a review of the record indicates that

defendant's counterclaims for equitable distribution and alimony were settled by the consent of both parties to the settlement agreement.

Subject matter jurisdiction over domestic claims is reserved to the District Court. *Sloan v. Sloan*, 151 N.C. App. 399, 403, 566 S.E.2d 97, 100 (2002). In a divorce action, either party may bring a claim for alimony and/or equitable distribution. N.C. Gen. Stat. §§ 50-16.3(A)(a), 21(a) (2013).

Plaintiff filed separate actions for absolute divorce and a QDRO. Defendant counterclaimed for equitable distribution, alimony and attorneys' fees; the counterclaim contained a file number that did not match the file number of either action, but was otherwise tailored to respond to plaintiff's complaint for absolute divorce. In its 12 February 2010 order dismissing defendant's counterclaims, the trial court noted that "Defendant's answer had the wrong case number, but it was clearly meant to be an answer to the Absolute Divorce Complaint by its contents," and that "Defendant and Plaintiff . . . consented to integrate the parties' mediated settlement agreement for Equitable Distribution and Alimony with the judgment for absolute divorce." The trial court also noted in its judgment for absolute divorce that "Defendant had filed his

own answer," indicating that the trial court considered defendant's counterclaims for equitable distribution and alimony at the time it entered judgment as to the divorce. As such, defendant's counterclaims for equitable distribution and alimony were considered in conjunction with plaintiff's complaint for absolute divorce by the trial court. Moreover, we note that as defendant's counterclaim was filed prior to the 3 February 2010 order granting plaintiff's complaint for absolute divorce on 15 October 2009, the trial court had jurisdiction over defendant's counterclaim for equitable distribution pursuant to N.C. Gen. Stat. § 50-11(e) (2013). *See Stark v. Ratashara-Stark*, No. COA07-665, 2008 N.C. App. LEXIS 41, at *5 (Jan. 15, 2008) (holding that where the plaintiff's claim "clearly preserves the equitable distribution claim *prior to* the . . . entry of judgment of absolute divorce, the trial court had jurisdiction to hear plaintiff's claim for equitable distribution."). Defendant's argument is overruled.

## *II.*

Defendant next contends the trial court lacked subject matter jurisdiction to incorporate the settlement agreement into the divorce order. We disagree.

"A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity." *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964) (citation omitted). "[O]ur Supreme Court [has] fashioned a 'one-size fits all' rule applicable to incorporated settlement agreements in the area of domestic law," *Fucito v. Francis*, 175 N.C. App. 144, 148, 622 S.E.2d 660, 663 (2005), which states that "[a]ll separation agreements approved by the court as judgments of the court [after 11 January 1983] will be treated . . . as court ordered judgments." *Walters v. Walters*, 307 N.C. 381, 386, 298 S.E.2d 338, 342 (1983). "[C]ourt ordered separation agreements, as consent judgments, are modifiable, and enforceable by the contempt powers of the court, in the same manner as any other judgment in a domestic relations case." *Id*. A separation agreement can be kept separate and under the laws of contract only where the parties agree to not submit their separation agreement to the trial court. *Id*.

Defendant contends the trial court lacked subject matter jurisdiction to incorporate the settlement agreement into the absolute divorce because the agreement lacks any indication that it was to be incorporated into the divorce judgment, and the

trial court failed to make any findings of fact that the parties stipulated to the incorporation. However, the record does not support defendant's contention. In its 3 February 2010 judgment for absolute divorce, the trial court noted that "all outstanding issues between the parties have been resolved pursuant to a mediated agreement by both parties." The trial court then made the following handwritten conclusion of law: "4. The parties['] mediated Settlement Agreement dated February 3, 2009 and contain[ing] the parties['] separation agreement is incorporated by reference." The settlement agreement, which was signed by defendant and his counsel, clearly states that "5. The parties waive the inclusion of any findings of fact and conclusions of law in the formal judgment/order which will memorialize this Memorandum." Moreover, in his 10 January 2013 motions for an order to show cause and modify alimony, defendant acknowledged that the "mediated agreement including provisions for equitable distribution and alimony was executed by the parties on February 3, 2009" and that "Said agreement was incorporated into the parties' divorce by agreement on February 3, 2010 . . . ." As such, defendant agreed in the settlement agreement to be bound by its terms, including its incorporation into the divorce judgment.

Additional evidence supports this incorporation, as in its 12 March 2013 order dismissing defendant's counterclaims and plaintiff's motions, the trial court made the following finding of fact: "Defendant and Plaintiff . . . consented to integrate the parties' mediated settlement agreement for Equitable Distribution and Alimony with the judgment for absolute divorce." The trial court then made the following conclusion of law: "3. That the parties' mediated agreement settling the matters of alimony and equitable distribution shall be attached to and incorporated with the parties' Divorce Judgment." We further note that in the 3 February 2010 hearing regarding plaintiff's complaint for absolute divorce, defendant acknowledged that he had signed the settlement agreement and that the agreement "represents the entire agreement of the parties with respect to the issues addressed herein." Defendant also did not object to the trial court's incorporation of the settlement agreement into the judgment for absolute divorce at the time the trial court proposed to do so. "[T]here is a presumption that provisions in a separation agreement or consent judgment made a part of the court's order are separable . . . . However, where the parties include unequivocal integration . . . clauses in the agreement, this language governs." *Hayes v.*

*Hayes*, 100 N.C. App. 138, 147, 394 S.E.2d 675, 680 (1990) (citations omitted). As the language of the settlement agreement clearly indicates an intention by both parties to integrate this agreement into the divorce judgment, the trial court had subject matter jurisdiction to make this incorporation. *See id*. at 149, 394 S.E.2d at 681 ("Clearly, the parties presented their Agreement to the court for its approval, and this submission is sufficient to bring it within the principles applied in this opinion."). Defendant's argument is overruled.

### III.

Thirdly, defendant argues that he cannot be held in contempt of court because the 3 February 2010 order is void. We disagree.

"As an order of the court, the court adopted separation agreement is enforceable through the court's contempt powers. This is true for all the provisions of the agreement since it is the court's order and not the parties' agreement which is being enforced." *Walters*, 307 N.C. at 385, 298 S.E.2d at 341.

> [A] party to a consent order like the one before us may move for the trial court to exercise its contempt powers to enforce that consent order. Contempt, however, may only be found upon a showing that the party in noncompliance with the consent order acted

> willfully, and was capable of complying with
> the consent order.

*Holden v. Holden*, ___ N.C. App. ___, ___, 715 S.E.2d 201, 208 (2011).

As discussed in *Issues I* and *II*, the trial court had subject matter jurisdiction to issue the 3 February 2010 order; therefore, the order was not void. In holding defendant in contempt of the 3 February 2010 order, the trial court made numerous findings of fact that defendant acted willfully in violating the terms of the order and that defendant had the financial resources available to comply with the order. The trial court then made the following conclusions of law: "Defendant has willfully refused to comply with the February 3, 2010 Order[;]" "Defendant is in civil contempt of the February 3, 2010 Order[;]" and "Further violation of the . . . order . . . shall result in Defendant being ordered into custody of the Wake County Jail by this Court." As such, the trial court made the appropriate findings of fact and conclusions of law required to hold defendant in contempt. Defendant's final argument is overruled.

Affirmed.

Judges STEPHENS and DILLON concur.

Report per Rule 30(e).